**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER FINLAYSON-FIFE, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No.: 24-cv-2452 |
| | ) | |
| v. | ) | Hon. Jorge L. Alonso |
| | ) | |
| MEREDITH WEBER, | ) | |
| | ) | |
| *Defendant*. | ) | |

**PLAINTIFF'S OPPOSITION TO MEREDITH WEBER'S MOTION TO DISMISS**

Plaintiff Jennifer Finlayson-Fife ("Fife") hereby responds to the Motion to Dismiss ("MTD") filed by Defendant Meredith Weber ("Weber"), as follows:

## INTRODUCTION

Weber's motion to dismiss is so deeply flawed on so many levels that the Court should reject it out of hand. Fife's claims are straightforward and, despite Weber's arguments to the contrary, they do not implicate the First Amendment or involve an employment dispute. The facts are simple. Weber sued Fife for professional malpractice in the Circuit Court of Cook County and Fife denied any malpractice and moved to dismiss two other counts of the complaint. Before the court rendered any decision on the motion, Weber and Fife settled the dispute. From Fife's perspective, a settlement made sense because it allowed her to (i) avert the financial, emotional, and time resources necessary to fight the suit; and (ii) avoid giving Weber a platform for calling attention to her meritless allegations. Accordingly, the non-disparagement and confidentiality clauses of the settlement agreement were extremely important to Fife.

Despite signing the settlement agreement prominently including both clauses and receiving generous consideration for her release of all claims, Weber promptly went on a national podcast called "Very Bad Therapy" and vilified Fife, accusing her of setting up an "illegal" practice without proper licensing, advertising psychotherapy illegally across state lines, providing fraudulent paperwork, committing ethical boundary violations, acting as a "cult leader," engaging in an "affair," "grooming," child "neglect," and "indentured servitude," as well as other criminal, unethical and abhorrent conduct. Weber's attack went on for over an hour and included so much detail that multiple people identified Fife as the target. Based on these statements, Fife filed the instant complaint for breach of the settlement agreement's confidentiality and non-disparagement clauses, and defamation *per se*.

Weber's motion to dismiss rests on three arguments: (1) Fife's action is a SLAPP suit barred by the Illinois Citizen Participation Act; (2) the settlement agreement's confidentiality and non-disparagement clauses are unenforceable under the Illinois Workplace Transparency Act; and (3) Fife's complaint fails to state a claim for defamation because the complaint fails to plead Weber made her defamatory statements with actual malice which Weber contends is required because Fife is a public figure. Each of Weber's arguments are so fundamentally flawed that they are frivolous.

First, as to her anti-SLAPP argument, Weber improperly assumes that the Illinois statute applies. Under the Illinois choice of law principle known as depeçage, the law of the speaker's state of residence more likely applies. Weber's failure to address the proper choice of law aside, Weber fails to demonstrate that her rant against Fife is the type of speech protected under any anti-SLAPP law, much less an attempt to participate in government or obtain favorable government action. Weber also ignores that a person may – as Weber did here - contract away any right to speak under the First Amendment or otherwise. Second, Weber's Workplace Transparency Act argument is baseless because nothing in the complaint establishes that Fife and Weber had an employer-employee relationship or were in an employment dispute as that Act requires. Third, Weber's attempt to imbue Fife with public figure status (or even limited public figure status) on a 12(b)(6) motion is improper. Except for cases involving plaintiffs who are clearly public officials or famous celebrities, whether a plaintiff qualifies as a public figure is intensely factual and inappropriate for resolution on a 12(b)(6) motion to dismiss. The complaint makes it sufficiently clear that Weber intentionally maligned Fife which is all that is required to satisfy the defamation fault standard for notice pleading purposes. For all these reasons, the Motion to Dismiss should be denied.

## STANDARD OF REVIEW

In reviewing a Rule 12(b)(6) motion to dismiss, the Court accepts well-pleaded allegations in a complaint as true and draws all permissible inferences in favor of the nonmovant. *See Sevugan v. Direct Energy Servs., LLC*, 931 F.3d 610, 612 (7th Cir. 2019). To survive a motion to dismiss, the complaint must describe the claim in sufficient detail to put the defendant on notice as to the nature of the claim and its bases, and it must plausibly suggest that the plaintiff has a right to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint must include only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). It need not allege specific facts, but it may not rest entirely on conclusory statements or empty recitations of the elements of the cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A plaintiff opposing a Rule 12(b)(6) motion "may elaborate on his factual allegations so long as the new elaborations are consistent with the pleadings." *Geinosky v. City of Chicago*, 675 F.3d 743, 745 (7th Cir. 2012)

## ARGUMENT

This Court should deny Weber's Fed. R. Civ. P. 12(b)(6) motion to dismiss because (I) Illinois Law does not apply to Weber's Anti-SLAPP motion, and even if it did, this lawsuit is not a SLAPP; (II) the confidentiality and non-disparagement provisions of the settlement agreement are enforceable; and (III) Weber cannot establish on this motion to dismiss that Fife is a public figure who must allege that Weber made her defamatory statement with actual malice.

### I. Illinois Law does not apply to Weber's Anti-SLAPP motion, and even if it did, this lawsuit is not a SLAPP

As an initial matter, Weber's argument that Fife's complaint is barred by the Illinois Citizen Participation Act, 735 ILCS 110/1 et seq. ("ICPA") is flawed because Weber, who did not live in Illinois when she made the defamatory statements, does not address the appropriate

choice of law.[1] In fact, Illinois law does not apply to Weber's anti-SLAPP defense. A federal court sitting in diversity must first apply the forum state's choice of law rules to determine which state's substantive law governs the dispute. *Healy Co. v. Milwaukee Met. Sewerage Dist.*, 50 F.3d 476, 478 (7th Cir. 1995). Illinois choice-of-law rules follow the "most significant relationship" approach. *Id*.; *Ferguson v. Kasbohm*, 131 Ill. App. 3d 424 (1st Dist. 1985). Illinois also applies the doctrine of depeçage, that requires the court to determine the controlling law on an issue-by-issue basis. *Vantassell-Matin v. Nelson*, 741 F. Supp. 698, 704; Restatement (Second) of Conflicts § 145, comment d ("each issue is to receive separate consideration if it is one which would be resolved differently under the local law rule of two or more of the potentially interested states"). Whether a statement is defamatory is distinct from the issue of whether that statement is protected by an affirmative defense such as application of an anti-SLAPP statute. *Vantassell-Martin*, 741 F. Supp. at 704 (the threshold defamation issue and the applicability of defenses are separate issues).

The Court should consider the following factors in deciding which state has the more significant relationship to the issue: (1) the place of the injury; (2) the place where the injury-causing conduct occurred; (3) the parties' domiciles; and (4) the place where the relationship between the parties is centered. Restatement (Second) of Conflicts of Laws § 145(2). *Doctor's Data, Inc. v. Barrett*, No. 10 C 03795, 2011 U.S. Dist. LEXIS 134921, at *9 (N.D. Ill. Nov. 22, 2011). In tort cases, the place of injury is a central factor in determining which state's law governs. However, "this factor is less important in the anti-SLAPP context." *Id*. Instead, "the

[1] The ICPA is designed to protect speakers from strategic lawsuits against public participation -- SLAPPs -- based upon their attempt to participate in government. *Garrido v. Arena*, 2013 IL App (1st) 120466, ¶ 14. A lawsuit is only a SLAPP where (1) the movant's acts were in furtherance of her right to petition, speak, associate, or otherwise participate in government or obtain favorable government action; (2) the non-movant's claims are based solely on, related to, or in response to movant's acts in furtherance of her constitutional rights; and (3) the non-movant fails to produce clear and convincing evidence that the movant's acts were not genuinely aimed at solely procuring favorable government action. *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 34.

place where the allegedly tortious speech took place, and the domicile of the speaker are central to the choice-of-law analysis on this [anti-SLAPP] issue." *Id*. "A state has a strong interest in having its own anti-SLAPP law applied to the speech of its own citizens," especially where "the speech initiated within the state's borders." *Id*. (finding Illinois law applied to underlying claims, but North Carolina anti-SLAPP law applied because the movant was a resident of North Carolina, and the speech did not originate in Illinois).

Weber's motion is silent on the choice of law even though Illinois law conflicts with the law of Virginia and Utah where Weber has lived. When Weber filed her suit against Fife and later signed the settlement agreement, she lived in Virginia. Cmplt.[2] Ex. A p. 6; MTD Ex. 2 ¶ 1. She now resides in Utah. Dkt. 1 ¶ 7; Cmplt. ¶ 7. She did not live in Illinois when she made her defamatory podcast. Because Virginia or Utah have a more significant interest in protecting Weber's speech than Illinois, Virginia's or Utah's anti-SLAPP laws should apply.[3] Further, there is a conflict between the different anti-SLAPP laws where the ICPA places the burden on the defendant to show that the suit is both retaliatory and meritless (*Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 36), the Utah anti-SLAPP statute places the burden on the plaintiff to show it has stated a prima facie claim (*Jacob v. Bezzant*, 2009 UT 37, ¶ 20, 212 P.3d 535), and the Virginia anti-SLAPP statute does not apply a burden shifting analysis and does not immunize any speech made with actual malice (*Greene v. City of Portsmouth*, 2024 Va. App. LEXIS 139, at *70 (Ct. App. Mar. 19, 2024)). Because Weber has failed to address the choice of law issue or cite any Virginia or Utah law that might apply, the Court should deny her motion on this ground.

*a. Even if the ICPA applied, Weber's speech was not in furtherance of her right to*

[2] The Complaint was initially filed in State court and was removed to this Court. The Complaint is referred to herein as "Cmplt." and is attached to the Motion to Dismiss as Exhibit 1.

[3] It is unclear from the current facts available where Weber was located when she provided her statements to the Podcast, however, the burden is on her as the movant, and she has not met her burden of proving that Illinois law applies to this issue.

*petition, speak, associate, or otherwise participate in government or obtain favorable government action.*

The purpose of the ICPA is to empower Illinois citizens to "petition, speak freely, associate freely, and otherwise participate in and communicate with government." 735 ILCS 110/5. Weber's speech had nothing to do with participating in government. Instead, Weber appeared on a podcast for the limited purpose of disparaging Fife on a show called "Very Bad Therapy." Although she accused Fife of perpetrating a series of illegal, unethical, fraudulent and incompetent acts (Cmplt. ¶ 17), at no time during her over-one-hour vilification of Fife did she make any call to action. Weber's statements are not participating in government or attempting to obtain government action, even by indirectly informing the public. Because Weber's statements have nothing to do with seeking government action, she has failed to meet the burden as to the first prong for an anti-SLAPP motion. *See Glorioso v. Sun-Times Media Holdings, LLC*, 2023 IL App (1st) 211526, ¶ 102 (finding question of fact as to whether the defendant's speech was in furtherance of their right to participate in government or obtain favorable government action).

*b. Fife's claims are not based solely on, related to, or in response to Weber's acts in furtherance of her constitutional rights.*

Under the ICPA, the defendant has "the initial burden of proving that plaintiff's lawsuit was *solely* based on, related to, or in response to defendant's acts in furtherance of his rights of petition, speech, or association, or to participate in government." *August v. Hanlon*, 2012 IL App (2d) 111252, ¶ 30 (emphasis in original). To do so, Weber must show that Fife's claim is (a) meritless and (b) made to retaliate against Weber to deter her from further engaging in the protected activities. *Goral*, 2014 IL App (1st) 133236, ¶ 38. "[A] claim is meritless under the [ICPA] if the defendant disproves some essential element of the plaintiff's claim." *Id*. at ¶ 40.

What Weber overlooks is that the entire premise of her ICPA argument is flawed because in the settlement agreement she expressly contracted away whatever right she had to disparage

Fife or disclose the basis of the settlement. Numerous courts have recognized that neither the First Amendment nor state anti-SLAPP laws confer a constitutional right to disregard promises that would otherwise be enforced under state law. *Cohen v. Cowles Media Co.*, 501 U.S. 663, 672 (1991) (First Amendment did not confer on the press a constitutional right to disregard promise of confidentiality to source); *Lowes v. Thompson*, 546 P. 3d 311, 316 (Ore. App. 2024) (rights protected by anti-SLAPP law can be waived through mutual non-disparagement provision of settlement agreement); *Monster Energy Co. v. Schechter*, 7 Cal. 5th 781, 796 (2019) ("a defendant who in fact has validly contracted not to speak has in effect 'waived' the right to the anti-SLAPP statutes protection in the event he or she later breaches that contract."); *Gialamas v. Deacon*, 2023 IL App (1st) 221400-U, ¶¶ 37, 44-45 (rejecting claim that settlement agreement's confidentiality provisions violated public policy by restricting whistleblower reports or the ability to speak about matters contained in public court files); *Hsu v. Zeisler*, 2023 U.S. Dist. LEXIS 183133 at *8 (N.D. Cal. October 11, 2023) (breach of contract claim based on breach of confidentiality provision survives anti-SLAPP motion).

Plaintiff argues that the Complaint is meritless because the settlement agreement is void and Fife failed to plead actual malice. MTD p. 7. However, as set forth below, the settlement agreement is an enforceable contract, and Fife is not a public figure who must plead and prove actual malice. Further, even if a claim is insufficiently pled, that does not equate to it being "meritless." *See Samoylovich v. Montesdeoca*, 2014 IL App (1st) 121545, ¶ 44.

Fife's lawsuit is also not retaliatory against Weber's right to participate in government. A suit is retaliatory if it is "intended to chill participation in government or to stifle political expression, as opposed to a suit that seeks damages for the personal harm to plaintiff's reputation from defendant's alleged defamatory acts." *Goral*, 2014 IL App (1st) 133236, ¶ 54, 57. Here,

Fife's goal is to seek damages for the personal, disparaging, and defamatory statements by Weber. As the Illinois Supreme Court held in *Sandholm v. Kuecker*, "[w]here a plaintiff files suit genuinely seeking relief for damages for the alleged defamation or intentionally tortious acts of defendants, the lawsuit is not solely based on defendants's [sic] rights of petition, speech, association, or participation in government." 2012 IL 111443, ¶ 45, 57; *see also August v. Hanlon*, 2012 IL App (2d) 111252, ¶ 30 (a lawsuit is not a SLAPP where the "objective in filing suit was not solely to interfere with and burden defendant's right to petition, but to seek damages for the personal harm to his reputation resulting from defendant's allegedly false and defamatory statements.") Like the plaintiffs in *Sandholm* and *August*, Fife's goal is not to interfere with Weber's speech and petition rights, but to seek damages for harm to her reputation.[4] The Court should find Weber has failed to meet her burden and deny Weber's anti-SLAPP motion.

II. <u>The settlement agreement is an enforceable contract</u>

Fife and Weber executed a settlement agreement that included confidentiality and non-disparagement provisions, for which Weber received consideration. Cmplt. ¶ 10-14. Weber argues that the settlement agreement is unenforceable because the Workplace Transparency Act ("WTA") grants an employee seven days to revoke an agreement, and the settlement agreement was effective upon execution. MTD p. 10. However, the Workplace Transparency Act does not apply, and even if it did, the confidentiality clause is not void.

First, the WTA only applies to employer-employee relationships. 820 ILCS 96/1-30. The WTA states that it only applies to a "settlement or termination agreement that includes promises

[4] Courts typically find a lawsuit is retaliatory where the suit is filed close in time to the speech, and where the damages are not reasonably related to the facts alleged and injury sustained. *Ryan v. Fox TV Stations, Inc.*, 2012 IL App (1st) 120005, ¶ 23 (lawsuit was retaliatory where it was filed three days after defendant's speech and sought seven million dollars for defamation which the Court described as a "classic SLAPP scenario.") Unlike *Ryan*, Fife filed this Complaint six months after the podcast aired, and Fife is only seeking to recover the benefit of the bargain of the settlement agreement plus reputational damages which are reasonably related to the allegations at issue.

of confidentiality related to alleged unlawful employment practices." 820 ILCS 96/1-30(a). Weber asserts, without any evidence or basis, that she was Fife's employee. MTD p. 2. Fife disputes the material allegations in Weber's previous complaint, which was for medical malpractice, negligence, and negligent infliction of emotional distress. MTD Ex. 2. Neither Weber's previous complaint nor the settlement agreement resolving it had anything to do with an employer-employee relationship. The WTA simply does not apply Weber's motion to dismiss Counts I and II should be denied.

Weber wrongfully relies on the truth of her allegations in the state court complaint. The Court can take judicial notice "of the timing of and the fact that those pleadings were filed," as well as "the fact that parties made the statements they made in those pleadings," however the Court cannot "assume the truth of those statements or take judicial notice of the facts asserted in those pleadings." *Matrix IV, Inc. v. Am. Nat'l Bank & Tr. Co*., 2007 U.S. Dist. LEXIS 18567, at *10 (N.D. Ill. Mar. 15, 2007); *ABN Amro, Inc. v. Capital International Ltd.,* No. 04 C 3123, 2007 U.S. Dist. LEXIS 19601, at *38 (N.D. Ill. Mar. 16, 2007)("[T]he Court may take judicial notice of the fact that Plaintiff filed a complaint in a related state court action, but the Court may not take notice of the facts alleged in the complaint for the truth of the matters asserted."); *GE Capital Corp*., 128 F.3d at 1082 (court cannot take judicial notice of facts from prior court records where those facts are reasonably disputed). Here, there is no evidence that any employer-employee relationship existed between Weber and Fife, and to the extent Weber relies on her previous allegations, they are disputed and cannot be considered in ruling on this Rule 12(b)(6) motion.

But even if the WTA applied, the confidentiality provision would not be void. The WTA grants an employee the right to revoke a settlement agreement within seven calendar days of

execution. 820 ILCS 96/1-30(a)(6); *Howard v. Proviso Township High School Board of Education*, No. 21-cv-3573, 2023 U.S. Dist. LEXIS 11024, at *15 (N.D. Ill. Jan. 23, 2023) (finding confidentiality provision was unenforceable because the employer publicly filed the agreement, but noting in dicta that the employee "did not convey an intention to revoke the agreement until after the seven-day period expired"). However, nowhere does the WTA require that the settlement agreement contain an express recitation of that statutory right to revoke. In fact, Weber's interpretation is contrary to the express language of the WTA because it would give her the right to revoke at will years after execution. Weber did not attempt to revoke within seven days of execution, therefore, the window to revoke has closed and the settlement agreement, including the confidentiality provision, is an enforceable contract.[5]

III. Fife is not a public figure and therefore did not need to plead actual malice

Fife is a private individual and therefore need only demonstrate that Weber was negligent in her publication of the alleged defamatory falsehood. *Imperial Apparel, Ltd. v. Cosmo's Designer Direct, Inc.*, 227 Ill. 2d 381, 393-94 (2008). Only where the plaintiff is found to be a public figure must she prove that the defendant acted with "actual malice" in making the defamatory expression. *See Gertz v. Robert Welch, Inc.*, 418 U.S. 323 (1974); *Kessler v. Zekman*, 250 Ill. App. 3d 172 (1993).

*a. Fife is not a general purpose public figure.*

General purpose public figures are individuals who have achieved "such pervasive fame or notoriety" that they "become a public figure for all purposes and in all contexts." *Id.* at

[5] Similarly, Weber had the opportunity to review the settlement agreement for 21 days, and the WTA states that the "employee may sign the agreement at any time, knowingly and voluntarily waiving any further time for consideration.'" 820 ILCS 96/1-30(a)(5). The WTA does not require that the settlement agreement expressly state that the employee has 21 days to review. Therefore, even if Weber executed the settlement agreement prior to 21 days, the confidentiality provision is not void.

351. Designation in this category is not lightly given, and it should not be premised merely upon some degree of participation in community or professional affairs. See *Id*. at 352. Rather, a defamation defendant must provide "clear evidence" of the plaintiff's "general fame or notoriety in the community, and pervasive involvement in the affairs of society." *Id*.

Weber cannot prove that Fife is such a household name to constitute a general purpose public figure. First off, Weber relies on exhibits that cannot be considered in a Fed. R. Civ. P. 12(b)(6) motion. It is well settled that in deciding a motion to dismiss under Rule 12(b)(6) the court can only consider the complaint and exhibits thereto. ***Rosenblum v. Travelbyus.com Ltd.***, 299 F.3d 657, 661 (7th Cir. 2002). There are limited exceptions for documents in the public record subject to judicial notice, (*Kobialko v. Pierce & Associates, P.C.*, No. 13 C 7362, 2014 U.S. Dist. LEXIS 45969, at *7 (N.D. Ill. Apr. 3, 2014)), and documents referenced in the complaint that are central to the claim (*Radaviciute v. S & K Lim Cleaners, Inc.*, No. 12-cv-6420, 2014 U.S. Dist. LEXIS 63527, at *14 (N.D. Ill. May 8, 2014)). Plaintiff's Group Ex. 3 purports to be two online articles, Group Ex. 4 purports to be Fife's website, and Group Ex. 5 purports to be a post from Fife's Facebook page and an online article which may reference Fife; however, none of these exhibits are within the Complaint, attached to the Complaint, part of the public record, referenced in the Complaint, or central to the claims in the Complaint. Therefore, they cannot be considered by the Court in assessing this motion to dismiss.[6]

Even if the Court were to consider Weber's exhibits, Group Ex. 4 shows only that Fife is a professional who publicizes her business, consistent with a private individual. See ***Pages v.***

[6] If the court considers matters outside the pleadings, the procedural rules require that "the motion shall be treated as one for summary judgment" under Fed. R. Civ. P. 56. Fed. R. Civ. P. 12(b); *ABN Amro, Inc. v. Capital International Ltd.*, No. 04 C 3123, 2007 U.S. Dist. LEXIS 19601, at *9 (N.D. Ill. Mar. 16, 2007). When proceeding on such a converted motion, "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56." *Id.* Consideration of outside matter without converting the Rule 12(b)(6) motion into a Rule 56 motion is a reversible error. *See Travel All Over the World, Inc. v. Kingdom of Saudi Arabia*, 73 F.3d 1423, 1431 (7th Cir. 1996).

*Feingold*, 928 F. Supp. 148, 154 (D.P.R. 1996) (real estate businessman did not have sufficient notoriety for public figure status). Weber argues that because Fife has a website, advertised her therapy practice, owns a Facebook group,[7] wrote publications, and has been on podcasts makes her a general-purpose public figure. MTD p. 13. This is far short of the requisite level of proof of fame and notoriety to constitute a general-purpose public figure. See *Jacobson v. CBS Broadcasting, Inc.*, 2014 IL App (1st) 132480, ¶ 29 (general purpose public figure must be "a well-known celebrity", or an individual whose name has reached the status of a "household word.").

*b. <u>Fife is not a limited purpose public figure.</u>*

Alternatively, Weber argues that Fife is a limited purpose public figure. MTD p. 11. Where individuals "thrust themselves to the forefront of particular public controversies in order to influence the resolution of the issues involved," they become public figures for the limited range of issues associated with those controversies. *Id*. To determine whether or not a plaintiff is a limited purpose public figure, Illinois applies a three-prong test: (i) there must be a public controversy, which means an issue that is being debated publicly, the outcome of which impacts the general public or some portion of it in an appreciable way and a matter of general public interest or concern is not sufficient; (ii) the plaintiff must have taken voluntary action seeking to influence the resolution of the controversy; and (iii) the defamation must be germane to the plaintiff's participation in the controversy. *Jacobson*, 2014 IL App (1st) 132480, ¶ 31 (adopting test from *Waldbaum v. Fairchild Publications, Inc.*, 627 F.2d 1287 (D.C. Cir. 1980)). A "public controversy" is a dispute that receives attention "because its ramifications will be felt by persons who are not direct participants." *Waldbaum*, 627 F.2d at 1296. Whether a plaintiff is a public

[7] Being an administrator of a Facebook group does not equate to ownership.

figure or not is a question of law for the court. *Kessler*, 250 Ill. App. 3d at 182.

*i. Weber has not proven the existence of a public controversy.*

In *Jacobson*, the Court found that a "well-known local personality and high profile reporter" was not an all-purpose public figure but was a limited purpose public figure. The Court found that there was a public controversy regarding the disappearance of a woman and the investigation of her husband where it was "[c]haracterized by various media sources as a 'huge' and ubiquitous story, the case was the focus of nightly news coverage, both nationally and locally… large segments of the public, at least locally, were following the developing investigation into [the woman's] whereabouts . . . and debating [the husband's] character and potential designation as a suspect… the media maintained a pervasive presence in the area of the [couple's] house, with reporters constantly at the door seeking interviews." *Jacobson*, 2014 IL App (1st) 132480, ¶ 32. The Court found that the case concerned an "overriding topical question of domestic violence, went beyond mere public interest, and had reached the level of public controversy." *Id*.; compare with *Butler v. Hogshead-Makar*, No. 21 C 6854, 2023 U.S. Dist. LEXIS 125108, at *20 (N.D. Ill. July 20, 2023) (the court was "not convinced" that "attempts to remove [a coach] from the sport of volleyball can be deemed a controversy, 'the outcome of which would impact the general public or some portion of it in an appreciable way.'").

Weber attempts to define a public controversy as "therapists crossing ethical boundaries within the LDS community and abusing their position of trust." MTD p. 13. Even if the Court were to consider the exhibits, it would only show two articles, one of which is about an LDS therapist inappropriately touching clients, and one article about homosexuality in the LDS community. This small sample set does not depict any widespread interest in or connection to any broader controversy, and simply do not have the level of public interest to create a

controversy for public figure defamation purposes. Weber has not presented any evidence beyond the conclusory assertion that "this issue has received significant media attention and is being debated publicly." MTD p. 13. Weber's attempt to place her defamatory and disparaging statements about Fife under the same umbrella as a decades-old sexual assault allegation against Mormon leaders is simply too tenuous. Therefore, the motion to dismiss the defamation count should be denied.

*ii. Weber has not proven that Fife thrust herself to the forefront of any public controversy.*

Further, even if there was a controversy, Weber has not proven that Fife thrust herself into the controversy. In *Jacobson*, the court found that the plaintiff reporter thrust herself into the controversy by frequently visiting the home of the victim and suspect with a camera crew, participating in public vigils and searches with a camera crew, urging the public to come forward with clues, soliciting close relationships with the victim's family members, and using connections with law enforcement. *Id*. at 33. The Court found that this conduct, combined with her "existing notoriety" and her demonstrated effect on the public's perception of the controversy led to her being a limited purpose public figure, especially where she was able to "avail herself of effective communication channels to explain her side of the story, choosing from an onslaught of media outlets which were pursuing her, and finding the ones that would best help her to clear her name." *Id*. at 34.

Here, Fife has not taken voluntarily sought to influence the resolution of any controversy. Weber asserts that Fife "often provides commentary on abuse and scandals within the LDS community, including therapists who have been reprimanded by the Mormon Church." MTD p. 13-14. Even if the Court were to consider Weber's evidence, Group Ex. 5 only shows a single Facebook post, and that Fife was a guest on a podcast discussing sexual assault by a Mormon

leader. This "[t]rivial or tangential participation is not enough" to satisfy the second element necessary to find that plaintiff was a limited purpose public figure. *Waldbaum*, 627 F.2d at 1297.

*iii. Weber has not proven that her defamatory comments were germane to any public controversy.*

Lastly, the defamation is not germane to any controversy. Weber claims that her comments were germane because they "go directly to Plaintiff's duplicitous conduct where she projects a position of trust and authority yet abuses that authority, precisely the subject of the controversy." MTD p. 14. However, nowhere in the podcast does she even mention the LDS church let alone therapists crossing ethical boundaries within the LDS community as she defines the public controversy. MTD p. 13.

If for any reason the Court finds that Fife is a public figure, she requests that this Court grant her leave to file an amended complaint.

**CONCLUSION**

For the foregoing reasons, Plaintiff Jennifer Finlayson-Fife respectfully requests that the Court deny Meredith Weber's motion to dismiss, or in the alternative grant her leave to file an amended complaint, and for any other relief this Court deems just.

Respectfully Submitted,

Jennifer Finlayson-Fife

/s/ Steven P. Mandell
One of Plaintiff's Attorneys

Steven P. Mandell
Bryan G. Lesser
Mandell Menkes LLC
333 W. Wacker Drive, Suite 450
Chicago, IL 60606
Telephone: 312-251-1000
Firm No. 38081
Email: smandell@mandellmenkes.com
blesser@mandellmenkes.com

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on this 3rd day of June, 2024, a true and correct copy of the Plaintiff's Opposition to Meredith Weber's Motion to Dismiss was filed using the Court's ECF system, which provided electronic notice to all counsel of record.

/s/ Steven P. Mandell