# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Jennifer Finlayson-Fife, | Case No: 24-cv-2452 |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. | |
| Meredith Weber, | |
| Defendant. | |

**MEREDITH WEBER'S REPLY IN SUPPORT OF HER MOTION TO DISMISS**

Defendant Meredith Weber ("Weber"), through counsel, Patterson Law Firm, LLC, and for her reply in support of her motion to dismiss Plaintiff Jennifer Finlayson-Fife's ("JFF") complaint, states as follows:

## Introduction

JFF primarily tries to refute Weber's motion to dismiss by improperly attempting to evade the law on technicalities. First, JFF argues that Weber's motion should be denied because Weber incorrectly analyzed Illinois' choice of law rules, even though Illinois law could still apply to Weber's motion. Next, JFF argues the Workplace Transparency Act ("WTA") does not expressly require recitation of the statutory right to revoke a settlement agreement, implying that, therefore, JFF was somehow not required to comply with the statute's explicit warning that noncompliance with the WTA's terms renders any promise of confidentiality void and severable. Lastly, JFF attempts to shield herself from public documents – news articles from sources whose reliability cannot reasonably be in dispute, as well as documents *she herself published* – to

disclaim limited-purpose public figure status and the requirement accompanying such status to plead actual malice in a defamation claim. Simply put, JFF's lawsuit is a SLAPP, the confidentiality and non-disparagement portions of the parties' Settlement Agreement are unenforceable as a matter of law, and JFF has failed to adequately plead her complaint given her failure to allege actual

malice. For these reasons, JFF's Complaint should be dismissed.

## Argument

**I. Under a choice of law analysis, either Illinois' Anti-SLAPP law or Utah's Anti-SLAPP may be applied to Weber's motion, and JFF's lawsuit can be dismissed as a SLAPP under both analyses.**

District Courts "sitting in diversity must apply the choice of law principles of the forum state. . . to determine which state's substantive law governs the proceeding." *West Bend Mutual Insurance Co. v. Arbor Homes LLC*, 703 F.3d 1092, 1095 (7th Cir. 2013). JFF correctly states that Illinois choice-of-law rules follow the "most significant relationship" approach. *Ferguson v. Kasbohm*, 131 Ill. App. 3d 424, 475 N.E.2d 984, 986 (Ill. App. Ct. 1st Dist. 1985). Additionally, Illinois applies the doctrine of depeçage, which directs Courts to perform a choice-of-law analysis "for each individual claim and defense arising in a case." *Ousterhout v. Zukowski*, No. 11-cv-9136, 2014 U.S. Dist. LEXIS 135906, at *6-7 (N.D. Ill. Sep. 26, 2014). Thus, which state's law should be applied to Weber's anti-SLAPP defense, and whether JFF has adequately alleged a claim for defamation, are separate issues. Regarding which state's law applies to Weber's motion, there are four factors which Courts consider in

2

determining which state has the most significant relationship to the claim or defense, including: (1) where the injury occurred; (2) where the injury-causing conduct occurred; (3) the domicile of the parties; and (4) where the relationship of the parties is centered. *Id.* at *9. Here, (1) the place the alleged injury occurred is Illinois, as JFF's domicile and where she would most likely have experienced the alleged injury to her personal and professional reputation (*see Vantassell-Matin v. Nelson,* 741 F. Supp. 698, 703 (N.D. Ill. 1990)); (2) the injury-causing conduct occurred in Utah (*see* Declaration of Meredith Weber, Ex. A, ¶ 3) and was published in California by the Very Bad Therapy Podcast (*see* Home Page, www.verybadtherapy.com) (last accessed June 27, 2024); (3) the domicile of the parties is Utah for Weber (Ex. A, ¶ 2) and Illinois for JFF (*see* Complaint ¶ 6, attached as Ex. 1 to Dkt #4); and (4) the relationship of the parties is centered in Illinois, as the underlying events preceding the parties' settlement took place in Illinois, and the Settlement Agreement at issue in this case contains an Illinois venue clause (Complaint, ¶ 5; *see also* Ex. A to the Complaint, pg. 5). Weighing these factors, a Court could reasonably apply Illinois law to Weber's motion.

On the other hand, JFF cites *Doctor's Data, Inc. v. Barrett* for the premise that, although the place of injury is typically a central factor in tort suits in determining which state's law applies, the place where the allegedly tortious speech took place and the domicile of the speaker are central to the choice-of-law analysis in the anti-SLAPP context because a state has a strong interest in having its own anti-SLAPP law applied to the speech of its citizens. No. 10 C

3

03795, 2011 U.S. Dist. LEXIS 134921, at *10 (N.D. Ill. Nov. 22, 2011). Here, the place where the allegedly tortious speech took place was in Utah, and Weber, the speaker, was domiciled in Utah. (Ex. A, ¶¶ 2-3). Under this approach, the Court may choose to apply Utah's anti-SLAPP law instead.[1] Regardless of whether Illinois or Utah law is applied, Weber's speech is protected, as explained in detail below.

### A. Weber's Motion Under Utah's Law

JFF cites *Jacob v. Bezzant*, 2009 UT 37, ¶ 20, 212 P.3d 535, in support of her argument that Utah places the burden on the plaintiff to show it has stated a prima facie claim. This is partly true. However, Utah enacted new anti-SLAPP legislation after *Jacob* was decided, which expands upon the categories of protected speech and introduces a more nuanced burden analysis. Utah's Uniform Public Expression Protection Act ("UPEPA"), Utah Code Ann. Title 78B, Ch. 25, *et seq.*, became effective in May 2023. As the law is so new, there is an absence of Utah caselaw citing it, so the following provisions have been cited directly from the UPEPA itself. One of the causes of action UPEPA explicitly states it applies to is one "asserted in a civil action against a person based on the person's exercise of the right of freedom of speech or of the press, the right to assemble or petition, or the right of association, guaranteed by the United States Constitution or Utah Constitution, on a matter of public concern." Utah Code Ann. § 78B-25-102(2)(c). Much like Illinois' Citizen Participation Act

---

[1] JFF also raises the possibility that Virginia law may apply. It cannot, as Virginia was not Weber's domicile at the time of recording the podcast, nor did the speech take place in Virginia. (Ex. A, ¶¶ 2-4).

4

("CPA"), the UPEPA allows parties to file motions for expedited relief to dismiss causes of action to which the UPEPA applies. Utah Code Ann. § 78B-25-103. In ruling on such a motion, "the Court shall consider the pleadings, the motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment under Utah Rules of Civil Procedure, Rule 56." Utah Code Ann. § 78B-25-106. In relevant part, the UPEPA then provides that, in ruling on a motion brought under the UPEPA, "the Court shall dismiss with prejudice a cause of action, or part of a cause of action, if:

> (a) the moving party establishes under Subsection 78B-25-102(2) that this chapter applies;
>
> (b) the responding party fails to establish under Subsection 78B-25-102(3) that this chapter does not apply; and
>
> (c) either:
>
>> (i) the responding party fails to establish a prima facie case as to each essential element of the cause of action; or
>>
>> (ii) the moving party establishes that:
>>
>>> (A) the responding party failed to state a cause of action upon which relief can be granted."

(Utah Code Ann. § 78B-25-107(1)).

Here, as explained in Weber's Memorandum in Support of Motion to Dismiss (Dkt #4), Weber's speech was an exercise of her right of freedom of speech and the right to assemble or petition on a matter of public concern, and

5

JFF's lawsuit aims to prevent Weber from exercising those rights. According to the Complaint, Weber anonymously appeared on the "Very Bad Therapy" podcast and discussed her experience having ethical boundaries violated in therapy but did not even name Plaintiff by name while making these statements. (Complaint, ¶¶ 17-18). Weber discussed her experiences with having her boundaries violated in therapy- a current issue within the LDS community which is being publicly debated and has received media attention. (*See* Group Ex. 3 to Dkt #4). This issue is undoubtedly a matter of public concern, so Weber's speech meets all requirements of § 78B-25-102(2)(c), and Weber has brought a motion to dismiss JFF's cause of action against her to which the UPEPA applies. § 78B-25-103. This Court may then consider the pleadings, Weber's motion, any reply or response to the motion, and any evidence that could be considered in ruling on a motion for summary judgment under Rule 56 of the Utah Rules of Civil Procedure, in ruling on her motion. § 78B-25-106.

Ultimately, if the Court applies Utah's UPEPA anti-SLAPP framework to Weber's motion, it may dismiss this case with prejudice under § 78B-25-107(1) if it finds that: (A) Weber has established that § 78B-25-102(2) applies to her speech; (B) JFF has failed to establish under § 78B-25-102(3) that this chapter does not apply (which JFF will not be able to establish, since the only exceptions provided under § 78B-25-102(3) apply to causes of action asserted by or against governmental units or employees acting in official capacity, or against a person primarily engaged in the business of selling or leasing goods

6

or services if the cause of action arises out of a communication related to the person's sale or lease of the goods or services, which this lawsuit does not); and (C) EITHER (i) that JFF has failed to establish a prima facie case as to each element of her cause of action, OR (ii) that Weber has established that JFF failed to state a cause of action upon which relief can be granted. For reasons explained further throughout this Reply, Weber can establish that JFF has failed to state a cause of action upon which relief can be granted because the Settlement Agreement is unenforceable due to violation of the Illinois Workplace Transparency Act, and because JFF has failed to plead that Weber made her statements with actual malice.

**B.  Weber's Motion Under Illinois Law**

Under the Citizen Participation Act, a lawsuit must be dismissed if (1) the movant's acts "were in furtherance of his right to petition, speak, associate, or otherwise participate in government to obtain favorable government action"; (2) the plaintiff's claims are "solely based on, related to, or in response to" the defendant's acts in furtherance of his constitutional rights; and (3) the plaintiffs fail to produce clear and convincing evidence that the movant's acts were not genuinely aimed at solely procuring favorable government action." *Chi. Reg'l Council of Carpenters v. Jursich*, 2013 IL App (1st) 113279, 986 N.E.2d 197, 201 (Ill. App. Ct. 1st Dist. 2013). The movant bears the burden of proof under the first two prongs of the test, after which the burden shifts to the

7

nonmovant." *Garrido v. Arena*, 2013 IL App (1st) 120466, 993 N.E.2d 488, 496 (Ill. App. Ct. 1st Dist. 2013).

> i. *Weber satisfies the first prong of the test because her speech was in furtherance of her right to petition, speak, associate or otherwise participate in government or obtain favorable government action.*

JFF argues that even if Illinois law does apply, Weber's speech was not in furtherance of her right to petition, speak, associate, or otherwise participate in government or obtain favorable government action. (Dkt #7, pp. 5-6). JFF simply asserts that Weber "appeared on a podcast for the limited purpose of disparaging Fife," and states that Weber did not make any call to action. A "call to action" is not a requirement for the Illinois Citizen Participation Act to apply to speech. JFF baselessly asserts that Weber's speech was not in furtherance of participating in government or seeking government action "even by indirectly informing the public." (Dkt #7, p. 6). Contrary to JFF's cited case, *Glorioso v. Sun-Times Media Holdings, LLC*, 2023 IL App (1st) 211526, 220 N.E.3d 402, 413 (Ill. App. Ct. 1st Dist. 2023), which found that a question of fact existed as to whether the defendant's speech was in furtherance of participation in government or pursuit of favorable government action, specifically noting that Glorioso was named directly in news articles and there was no action voters could take to remove Glorioso from office since he was already fired, Weber never named JFF directly and her speech was not aimed at pursuing discipline against JFF; rather, Weber exercised her freedom of speech to raise awareness on the public issue of therapists crossing ethical boundaries, pursue favorable

8

government action, and encourage positive change and accountability within the profession.

> ii. *Weber satisfies the second prong of the test because JFF's claims are based solely on, related to, or in response to Weber's acts in furtherance of her constitutional rights, because they are meritless and retaliatory.*

To establish that JFF's suit was "solely based on" Weber's exercise of her political rights, Weber must show that JFF's suit "was meritless and was filed in retaliation against [her] protected activities in order to deter [her] from further engaging in those activities." *Goral v. Kulys*, 2014 IL App (1st) 133236, 21 N.E.3d 64, 76 (Ill. App. Ct. 1st Dist. 2014), citing *Garrido*, 2013 IL App (1st) 120466, 993 N.E.2d 488, 496 (Ill. App. Ct. 1st Dist. 2013). A claim is "meritless" under the Act if the defendant "disproves some essential element of the [plaintiff's] claim." *Id.* JFF's lawsuit is meritless because an essential element of her claim cannot be met: the Settlement Agreement's confidentiality provision is void because it violates the Workplace Transparency Act, 820 ILCS 96/1 *et seq.* for failure to provide the requisite 21 days to consider the agreement and 7 calendar days to revoke it, unless Weber *knowingly and voluntarily waived* the additional time. 820 ILCS 96/1-30(a)(5)-(6). Nothing in the agreement provided such information to Weber, so Weber could not have knowingly or voluntarily waived the additional time. JFF argues that Weber's argument is flawed because Weber contracted away her rights in the Settlement Agreement, but the Settlement Agreement is unenforceable. Although there is caselaw to support JFF's argument that parties can contract

away their rights, JFF fails to acknowledge that the WTA provides that noncompliance with its provisions renders any promise of confidentiality void and severable, while the remainder of the agreement remains valid and enforceable. *Howard v. Proviso Twp. High Sch. Bd. Of Educ.*, No. 21-cv-3573, 2023 U.S. Dist. LEXIS 11024, *16 (N.D. Ill. Jan. 23, 2023) (citing 820 ILCS 96/1-30(c)). Moreover, the Court in *Howard* states, "[u]ltimately, any concerns about confidentiality here are overblown because Proviso moved to enforce the agreement, thus making the agreement's terms a matter of public record." *Id.* Likewise, JFF made the Settlement Agreement a part of the public record and has not named any individuals or any real effect in connection with her claim that "multiple people" supposedly "identified" her based on Weber's anonymous comments which did not reference JFF by name, so JFF's concerns about confidentiality are similarly overblown. Since the provision is unenforceable and JFF did not allege malice (see further discussion in Section III below), her claims are meritless and should be dismissed.

JFF's lawsuit is also clearly retaliatory, although JFF argues it is not because she is seeking damages for reputational harm. This argument fails to adequately address the two factors that Courts consider in determining if a lawsuit is retaliatory: (1) the proximity in time between the protected activity and the filing of the complaint, and (2) whether the damages requested are reasonably related to the facts alleged in the complaint and are a "good-faith estimate of the extent of the injury sustained." *Ryan v. Fox TV Stations*, Inc., 2012 IL App (1st) 120005, 979 N.E.2d 954, 962-63 (Ill. App. Ct. 1st Dist.

10

2012). Less than a year after Weber appeared on the podcast, JFF filed her complaint in this matter. The proximity between the protected activity and the filing of this complaint tends to show this lawsuit is retaliatory. Moreover, JFF is seeking excessive damages disproportionate to the grievances asserted in her complaint. What JFF seeks is a far cry from the "benefit of the bargain" of entering into the Settlement Agreement: she is pursuing "return of all compensation received pursuant to the Settlement Agreement," among liquidated damages, attorneys' fees and other damages. (Complaint, ¶25, ¶ 29, ¶ 33). A plain reading of the Settlement Agreement itself shows that there is no basis for the return of the amounts under the Settlement Agreement. The demand for this amount, for which JFF still advances no legal theory, cannot be seen as anything other than an attempt to "strike fear" in Weber. JFF's request for the return of all compensation ignores the fact that JFF, as primary consideration for the compensation paid, received a release and dismissal from Weber's claim seeking significant damage for JFF's conduct that led to the lawsuit and settlement.

As Weber has met the first two elements, the burden shifts to JFF to produce clear and convincing evidence that Weber's acts were not genuinely aimed at solely procuring favorable government action. JFF has provided no such evidence, so her case must be dismissed.

## II. The Settlement Agreement is unenforceable under the Workplace Transparency Act.

JFF asserts that the WTA only applies to employer-employee relationships, which is an accurate statement. However, it appears from her Response that

11

JFF is trying to utilize semantics to avoid application of the WTA by attempting to deny that she and Weber had an employer-employee relationship. JFF argues that the Court cannot take judicial notice of the factual allegations in Weber's complaint since they were "reasonably disputed." Even if the Court takes no judicial notice whatsoever of Weber's complaint, it is plainly evident from the language within the Settlement Agreement itself that JFF intended to escape employer liability, as the Complaint alleges employment (Ex. 2 to Dkt #4, ¶¶ 37-39) and the settlement agreement purports to release the "allegations in the complaint filed by" Weber. The WTA applies to contracts entered into, modified, or extended on or after the effective date of the Act (January 1, 2020). 820 ILCS 96/1-10(c). Therefore, it applies to the Settlement Agreement in this matter. Because the Settlement Agreement did not inform Weber that she had the requisite 21 days to consider the agreement and 7 calendar days to revoke it, Weber could not have knowingly and voluntarily waived these requirements. 820 ILCS 96/1-30(a)(5)-(6). Therefore, JFF's noncompliance with the WTA's provisions rendered any promise of confidentiality void and severable, while the remainder of the agreement remains valid and enforceable. *Howard*, 2023 U.S. Dist. LEXIS 11024, *16 (citing 820 ILCS 96/1-30(c)).

### III.  JFF is a limited-purpose public figure who has failed to plead the requisite actual malice in Count III.

Even if JFF cannot be considered a general-purpose public figure possessing household name notoriety, she is most certainly a limited-purpose public figure within the LDS and mental health communities. In her very own words, JFF indicates in her Complaint that she is so well-known that, without even being

12

mentioned by name, "multiple people identified" her based on Weber's statements. (Complaint, ¶19). JFF asserts that she is a private individual who is simply promoting her business like any other private individual. However, typical "private individuals" do not appear on Huffpost, the Washington Post, NPR, the Salt Lake Tribune, and LDSLiving, host a Facebook group with 20,000 members, write multiple publications, or own podcasts available on major platforms, all of which JFF advertises on her own website.[2]

Illinois uses a three-part test to determine whether an individual is a limited-purpose public figure (*see Kessler v. Zekman*, 250 Ill. App. 3d 172, 620 N.E.2d 1249, 1255 (Ill. App. Ct. 1st Dist. 1993)): (1) it requires a public controversy (meaning "an issue that is being debated publicly, the outcome of which impacts the general public or some portion of it in an appreciable way"), however, "[a] matter of general public interest or concern is not sufficient"; (2) "the plaintiff must have undertaken some voluntary act seeking to influence the resolution of the issues involved"; and (3) "the alleged defamation must be germane to the plaintiff's participation in the controversy." *Jacobson v. CBS*

---

[2] JFF also claims that Weber is improperly attempting to "imbue Fife with public figure status." However, it appears JFF is simply trying to prevent the Court from taking judicial notice of public documents which should not be in dispute, including (1) published news articles discussing the therapist controversy within the LDS community (Group Ex. 3 to Dkt #4), (2) JFF's own website which she controls (Group Ex. 4 to Dkt #4), and JFF's own Facebook page and a published news article on a podcast which JFF appeared on (Group Ex. 5 to Dkt #4). The Court may take judicial notice of these documents under Federal Rule of Evidence 201, which permits Courts to take judicial notice of a fact not in reasonable dispute because it: "(1) is generally known within the trial Court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." FRE 201(b). There is precedent allowing judicial notice to be taken of JFF's own website: where a party refers to another party's website in its briefing, the district Court may take judicial notice of the entire contents of that website. *Goplin v. Weconnect, Inc.*, 893 F.3d 488, 491 (7th Cir. 2018).

*Broadcasting, Inc.*, 2014 IL App (1st) 132480, 19 N.E.3d 1165 at 1176-77 (Ill. App. Ct. 1st Dist. 2014) (internal citations omitted).

    Regarding factor (1), the public controversy that is being debated is the issue of therapists crossing ethical boundaries within the LDS community and abusing their position of trust, and the issue has received significant media attention (*see* Group Ex. 3 to Dkt #4). This is not simply a "matter of general public interest or concern," since the outcome impacts the general public or a portion of it (the LDS community, therapists, and patients of therapists) in an appreciable way. Regarding factor (2), JFF often provides public commentary on abuse and scandals within the LDS community, including therapists who have been reprimanded by the Mormon church (*see* Group Ex. 5 to Dkt #4). As to factor (3), Weber's alleged defamation is germane to JFF's participation in the controversy as Weber's statements go directly to JFF's duplicitous conduct where she projects a position of trust and authority yet abuses that authority, precisely the subject of the controversy. Contrary to JFF's claims, JFF's commentary on the controversy is not "trivial and tangential"; she has sought to resolve the controversy by commenting on other therapists' bad acts and using moral platitudes to make herself appear trustworthy and ethical in comparison. All three factors considered, JFF qualifies as a limited-purpose public figure who is required to prove actual malice in Count III. *Jacobson*, 2014 IL App (1st) 132480, 19 N.E.3d 1165 at 1175-77. Because JFF has not alleged any malice in her Complaint whatsoever and has not proven that Weber published the alleged defamatory falsehood with knowledge that it was false or

14

with reckless disregard for the truth, JFF's claim does not allege sufficient factual matter to state a claim for relief that is plausible on its face, so Count III fails and must be dismissed. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## CONCLUSION

For the reasons stated herein, JFF's Complaint should be dismissed with prejudice, with an award of fees to Weber.

Dated: July 1, 2024        Respectfully submitted,

/s/Michael D. Haeberle
Michael D. Haeberle (#6309164)
Kaitlyn Harris-Hertel (#6345639)
Patterson Law Firm, LLC
200 W. Monroe, Ste. 2025
Chicago, IL 60606
Tel.: 312-223-1699
Fax: 312-223-8549
mhaeberle@pattersonlawfirm.com
kharris-hertel@pattersonlawfirm.com
*Attorneys for Defendant Weber*

# Exhibit A

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| Jennifer Finlayson-Fife, | Case No: 24-cv-2452 |
| Plaintiff, | JURY TRIAL DEMANDED |
| v. | |
| Meredith Weber, | |
| Defendant. | |

### Declaration of Meredith Weber

I, Meredith Weber, of Weber County, in the State of Utah, declare as follows:

1. I have personal knowledge of the following facts and, if called as a witness, I could and would competently testify to the following:

2. At the time of recording the episode of the Very Bad Therapy Podcast ("the Podcast") at issue in this matter, I lived in Utah.

3. I recorded the Podcast from my home in Utah.

4. Although I owned property in Virginia at the time of recording the Podcast and visited it sometimes, it was not my primary place of residence at the time of the Podcast recording.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

_____
Meredith Weber