**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| Jennifer Finlayson-Fife, | Case No: 24-cv-2452 |
| Plaintiff, | |
| v. | Hon. April M. Perry |
| | Magistrate Judge Jeffrey T. Gilbert |
| Meredith Weber, | |
| Defendant. | |

**Meredith Weber's Answer, Affirmative Defenses and Counterclaims to
Plaintiff's Complaint**

Defendant, Meredith Weber ("Ms. Weber"), through counsel, Patterson

Law Firm, LLC, and for her Answer, Affirmative Defenses and

Counterclaims to Plaintiff, Jennifer Finlayson-Fife's ("Plaintiff")

Complaint, states as follows:

**Answer to Complaint**

1.  JFF and Weber are parties to a Settlement Agreement.

**ANSWER:** Admit that Plaintiff and Ms. Weber are parties to the

Settlement Agreement attached to Plaintiff's Complaint.

2.  The Settlement Agreement included a "CONFIDENTIALITY AND NON-

DISPARAGEMENT" Provision.

**ANSWER:** Admit.

3.  Despite receiving generous consideration to support the

confidentiality and non-disparagement requirements, Weber proceeded to

violate the provision and speak publicly about the Settlement and
Plaintiff JFF.

**ANSWER:** Deny.

4.  JFF brings this suit for Breach of Contract and Defamation based on
Weber's public statements that were disseminated online via a podcast.

**ANSWER:** Admit Plaintiff brought these claims; deny the claims have
merit.

5.  The Settlement Agreement provides "Any suit or proceeding brought
hereunder shall have its situs and venue in ILLINOIS." (A copy of the
"Settlement Agreement" is attached as Exhibit A).

**ANSWER:** Admit that the Settlement Agreement is attached to Plaintiff's
Complaint as Exhibit A and that it contains this venue provision.

6.  JFF is an individual who resides in Cook County, Illinois.

**ANSWER:** Admit.

7.  Weber is an individual who resides in the State of Utah.

**ANSWER:** Admit.

8.  This Court has specific jurisdiction over Weber, because all events
alleged in this Complaint took place in Cook County, Illinois, and the
contract provides that it shall be litigated in this jurisdiction.

**ANSWER:** Admit that the Northern District of Illinois has jurisdiction over
Ms. Weber regarding this matter pursuant to 28 U.S.C. § 1332(a)(1).

9.  Venue is proper in this Court pursuant to 735 ILCS 5/2-101.

**ANSWER:** Admit that the Northern District of Illinois is the proper venue in this action pursuant to 28 U.S.C. §1441(a).

10. Weber previously sued JFF in the Cook County Law Division, Case Number 21L3640.

**ANSWER:** Admit.

11. On or about March 15, 2022, JFF and Weber executed the Settlement Agreement.

**ANSWER:** Admit.

12. Pursuant to the Settlement Agreement, Weber received a settlement payment, and agreed to release JFF from potential liability.

**ANSWER:** Admit that Ms. Weber received a settlement payment and agreed to certain releases as articulated in the settlement agreement.

13. With regard to the Settlement Agreement's confidentiality terms, Weber agreed to keep JFF's identity confidential by "not identifying names, titles, education, religious affiliation, geographical location, or life coaching activities," and, if necessary, by "changing the facts that form the basis of [Weber's] Complaint to protect against disclosure" of JFF.

**ANSWER:** Admit.

14. With regard to the Settlement Agreement's non-disparagement terms, Weber agreed that she would "not at any time make any disparaging statements or representations, either directly or indirectly, whether in writing or orally, by word or gesture, to any person whatsoever" about JFF. Disparaging statement was defined broadly to include "any

3

communication which, if publicized to another, would cause the recipient of the communication to question the business condition, integrity, competence, good character, professional conduct, or product quality of the person or entity to whom the communication relates."

**ANSWER:** Admit.

15. The Settlement Agreement provided that Weber would pay "fair, adequate, and just compensation for the loss of such consideration, the loss of benefit of the bargain, injury to reputation, increased potential exposure to additional claims, embarrassment, and injury to standing in the community." The damages included, but were not limited to, $50,000.00, plus any attorney's fees or costs.

**ANSWER:** Admit.

16. The Settlement Agreement further required Weber to indemnify JFF for all causes of action related to the incident underlying her lawsuit, including attorney's fees.

**ANSWER:** Deny.

17. On or about August 7, 2023, Weber appeared on the internet podcast entitled "Very Bad Therapy," in an episode called, "The Shrink Next State." In this podcast, Weber alleged that her therapist set up an "illegal" practice without proper licensing, advertised psychotherapy illegally across state lines, provided fraudulent paperwork, committed ethical boundary violations, acted as a "cult leader," engaged in an

"affair," "grooming," child "neglect," and "indentured servitude," among other criminal, unethical and abhorrent conduct.

**ANSWER:** Admit that Ms. Weber appeared on the "Very Bad Therapy" podcast at a date before the release date, with Ms. Weber being named and referred to only as "Millie." Admit that Ms. Weber anonymously alleged her therapist's practice was "set up" illegally, and that the therapist committed ethical boundary violations and engaged in "grooming." Deny that Ms. Weber stated that her therapist engaged in "indentured servitude," as Ms. Weber's statement was that her "lawyers later down the road were like, 'this is indentured servitude.'" Deny that Ms. Weber stated that her therapist was "without proper licensing," that the therapist "advertised psychotherapy illegally across state lines," that the therapist "provided fraudulent paperwork," acted as a "cult leader," engaged in an "affair" and child "neglect," and deny Plaintiff's remaining allegations regarding "other criminal, unethical and abhorrent conduct."

18. Although Weber did not mention JFF expressly by name, Weber provided extensive and detailed information about JFF that was sufficient to allow the listening audience to conclude that Weber was speaking about JFF. The information Weber provided about JFF, included but was not limited to, facts about JFF's extensive online presence, Facebook ads, Skype sessions, JFF's years of experience, the high regard with which JFF was held in their "shared community", JFF's hobbies, religious attendance, children, children's activities, spouse, and

5

that JFF's residence was in the Midwest, "four or five states" west of
Weber's home on the East Coast. (The statements in Paragraphs 17 and
18 are collectively referred to herein as "Weber's Statements").

**ANSWER:** Admit that Ms. Weber did not mention Plaintiff by name. Deny
that the information provided was "extensive and detailed" and "sufficient
to allow the listening audience to conclude that Weber was speaking
about JFF." Admit Ms. Weber anonymously discussed her therapist's
extensive online presence, Facebook ads, Skype sessions, years of
experience, the high regard with which the therapist was held in their
"shared community", the therapist's hobbies, religious attendance,
children, children's activities, spouse, and that her therapist's residence
was in the Midwest, "four or five states" west of Ms. Weber's home on the
East Coast.

19. Multiple people identified JFF based on Weber's Statements and
proceeded to notify JFF of Weber's Statements.

**ANSWER:** Ms. Weber lacks knowledge or information sufficient to form a
belief regarding the truth of the allegations in Paragraph 19.

20. Weber's Statements are false, disparaging, and injurious to JFF's
reputation in the community.

**ANSWER:** Deny.

### COUNT I-BREACH OF CONTRACT (Confidentiality)

21. JFF realleges paragraphs 1-20.

**ANSWER:** Ms. Weber realleges her answers to paragraphs 1-20.

6

22. The Settlement Agreement is a valid, enforceable Contract.

**ANSWER:** Deny as interpreted by Plaintiff.

23. Weber breached the Settlement Agreement by failing to keep JFF's identity confidential.

**ANSWER:** Deny.

24. JFF has done everything required under the Settlement Agreement.

**ANSWER:** Deny.

25. JFF has suffered damages to her reputation and standing in the community.

**ANSWER:** Deny.

### COUNT II-BREACH OF CONTRACT (Non-Disparagement)

26. JFF realleges paragraphs 1-20.

**ANSWER:** Ms. Weber realleges her answers to paragraphs 1-20.

27. Weber breached the Settlement Agreement by making public statements that caused recipients of the communication to question the business condition, integrity, competence, good character, and professional conduct of JFF.

**ANSWER:** Deny.

28. JFF has done everything required of her under the Settlement Agreement.

**ANSWER:** Deny.

29. JFF has suffered damages to her reputation and standing in the community.

**ANSWER:** Deny.

## COUNT III-DEFAMATION (Per Se)

30. JFF realleges paragraphs 1-20.

**ANSWER:** Ms. Weber realleges her answers to paragraphs 1-20.

31. Weber stated that her therapist set up an "illegal" practice without proper licensing, advertised psychotherapy illegally across state lines, provided fraudulent paperwork, committed ethical boundary violations, acted as a "cult leader," engaged in an "affair," "grooming," child "neglect," and "indentured servitude," among other criminal, unethical and abhorrent conduct.

**ANSWER:** Admit that Ms. Weber anonymously alleged her therapist's practice was "set up" illegally, and that the therapist committed ethical boundary violations and engaged in "grooming." Deny that Ms. Weber stated that her therapist engaged in "indentured servitude," as Ms. Weber's statement was that her "lawyers later down the road were like, 'this is indentured servitude.'" Deny that Ms. Weber stated that her therapist was "without proper licensing," that the therapist "advertised psychotherapy illegally across state lines," that the therapist "provided fraudulent paperwork," acted as a "cult leader," engaged in an "affair" and child "neglect," and deny Plaintiff's remaining allegations regarding "other criminal, unethical and abhorrent conduct."

32. These statements are false.

**ANSWER:** Deny.

8

33. These statements are defamatory per se as they impute the commission of a criminal offense, impute an inability to perform or want of integrity in the discharges of duties related to JFF's employment, impute prejudice to JFF's profession or business, and accuse JFF of adultery or fornication.

**ANSWER:** Deny.

### Ms. Weber's Affirmative Defenses

#### I. Lack of Standing

34. Plaintiff lacks standing to bring this action, as Plaintiff's insurance paid the settlement payment to Ms. Weber, not Plaintiff.

#### II. Against Public Policy

35. The Settlement Agreement is unenforceable as it is against public policy because it restricts Ms. Weber's ability to exercise her First Amendment rights to speak on matters of public concern without naming Plaintiff.

#### III. Vagueness

36. The Settlement Agreement's terms as to confidentiality are unenforceable as they are excessively vague.

#### IV. Workplace Transparency Act

37. The Settlement Agreement is unenforceable as it violates the Workplace Transparency Act.

### V. Reformation

38. There was a mutual mistake in the negotiation and documentation of the Settlement Agreement, requiring the Court to reform the contract to permit Defendant to engage in advocacy regarding therapy abuse.

### VI. Truth

39. The statements complained of were true.

### VII. Overbreadth

40. The confidentiality restrictions of the Settlement Agreement are overbroad.

### VIII. Qualified Privilege

41. Given Plaintiff's status as a public figure, and the importance of preventing therapy abuse, the statements were qualifiedly privileged due to the public interests involved.

### IX. Unlawful Prohibition

42. As written, the Settlement Agreement prohibits any communications to the Illinois Department of Financial and Professional Regulation and similar state agencies for the many states where Plaintiff practices.

43. It is a matter of public policy that parties cannot be precluded from reporting misconduct, including the unlawful and out-of-state practice, to regulatory agencies.

44. Pursuant to 820 ILCS 96/1-20, "[n]o contract, agreement, clause, covenant, waiver, or other document shall prohibit, prevent, or otherwise restrict an employee, prospective employee, or former employee from

reporting any allegations of unlawful conduct to federal, State, or local officials for investigation, including, but not limited to, alleged criminal conduct or unlawful employment practices."

45. As the Settlement Agreement is so written, it is unenforceable.

## X. Unenforceable penalty

46. The liquidated damages clause is an unenforceable penalty.

## XI. Lack of Malice

47. Ms. Weber did not make her statements with malice.

### Ms. Weber's Counterclaims

Defendant/Counter-Plaintiff, Meredith Weber ("Ms. Weber"), through counsel, Patterson Law Firm, LLC, and for her Counterclaim against Plaintiff/Counter-Defendant, Jennifer Finlayson-Fife ("Counter-Defendant"), states as follows:

### Jurisdiction and Venue

1. This Court has subject matter jurisdiction pursuant to 28 U.S. Code § 1332 in that the matter in controversy exceeds $75,000 and is between citizens of a State and citizens or subjects of a foreign state.

2. This Court has personal jurisdiction over Counter-Defendant because she resides and does business in this district.

3. Venue is proper pursuant to 28 U.S.C. § 1391 as a substantial part of the events giving rise to the claims and causes of action occurred in this District.

**Parties**

4.  Counter-Plaintiff, Meredith Weber ("Ms. Weber") is an individual who resides in the state of Utah.

5.  Counter-Defendant, Jennifer Finlayson-Fife ("Counter-Defendant" or "JFF") is an individual who resides in Cook County, Illinois.

**Facts Relevant to All Counts**

6.  Ms. Weber is a former therapeutic client and employee of JFF.

7.  In or around August 2017, Ms. Weber initially reached out to JFF seeking therapy counseling services, and subsequently became a therapeutic client of JFF's.

8.  At this time, Ms. Weber lived on the East Coast.

9.  In October 2017, during a therapy session, JFF suggested that she needed extra help at her home in Chicago and told Ms. Weber that she could leave her marital home, stay with JFF and her family, and work for her.

10. Ms. Weber was in acute distress at the time, and had no knowledge that this type of invitation was unethical, exploitative, and wholly inappropriate.

11. JFF and Ms. Weber periodically continued to discuss JFF's offer for Ms. Weber to move to Chicago to be a "helper" or nanny at JFF's household for JFF's children.

12. Ms. Weber agreed to JFF's proposition and, in June 2018, Ms. Weber moved from the East Coast to Chicago for this nanny job.

12

13. JFF gave Ms. Weber therapy sessions in exchange for Ms. Weber working as a nanny and handling other various household tasks.

14. JFF would keep a running "tab" of Ms. Weber's outstanding bills for therapy, and would allow Ms. Weber to "work off the tab" by working for JFF. JFF would then apply the "pay" for those hours to cover Ms. Weber's outstanding therapy bill.

15. JFF created a Google sheet to track Ms. Weber's hours and payment information.

16. While being employed by JFF, Ms. Weber performed a wide range of services for JFF's family, including, among other things, caring for JFF's children, grocery shopping for the family, preparing meals, chauffeuring JFF's children to activities, assisting JFF with the sale of a piano, and otherwise filling in any household assistant role that JFF needed.

17. This employment arrangement violated Illinois state and federal wage and hour laws.

18. Some of Ms. Weber's comments during the "Very Bad Therapy" podcast, which is the focus of JFF's Complaint in this action, were made in regard to JFF's wrongful employment practices.

19. On or about March 15, 2022, JFF and Weber executed the Settlement Agreement attached hereto as Exhibit A.

20. The Settlement Agreement states that Ms. Weber releases JFF and her associated entities from "any and all, and to the broadest extent allowed by law, claims, actions, causes of action, demands, rights, suits,

13

debts, dues, sums of money, accounts, reckonings, bonds, bills, liens, med pay, personal injury protection, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, expenses, compensation, rights, attorney fees, costs, loss of services, wrongful death, expenses, compensation and damages whatsoever . . .". Ex. A, pg. 1, ¶ 1. Thus, this clause would prevent Ms. Weber from pursuing claims for unlawful employment practices against JFF.

21. Furthermore, the Settlement Agreement contains extensive confidentiality and non-disparagement provisions which would prevent Ms. Weber from being able to make truthful statements regarding JFF's unlawful employment practices. Ex. A, pp. 3-5.

**COUNT I**
**Declaratory Judgment**
**The Settlement Agreement is Void Pursuant to the Illinois Workplace Transparency Act, 820 ILCS 96/1-1, *et seq.***

22. Ms. Weber realleges paragraphs 1-20 of her Counterclaim as if fully set forth herein.

23. Ms. Weber was an "employee" of JFF as defined by Section 1-15 of the Illinois Workplace Transparency Act (the "Act"), 820 ILCS 96/1-1, *et seq.*, which is equivalent to the definition set forth in the Illinois Human Rights Act, 775 ILCS 5/2-101.

24. JFF was an "employer" of Ms. Weber as defined by Section 1-15 of the Act, which is equivalent to the definition set forth in the Illinois Human Rights Act, 775 ILCS 5/2-101.

14

25. Section 1-10(c) of the Act provides that the Act "applies to contracts entered into, modified, or extended on or after the effective date of this Act," which was effective January 1, 2020.

26. As Ms. Weber and JFF entered into the Settlement Agreement on March 15, 2022, the Act applies to the Settlement Agreement.

27. The Act defines an "unlawful employment practice" as "any form of unlawful discrimination, harassment, or retaliation that is actionable under Article 2 of the Illinois Human Rights Act [775 ILCS 5/2-101 et seq.], Title VII of the Civil Rights Act of 1964, or any other related State or federal rule or law that is enforced by the Illinois Department of Human Rights or the Equal Employment Opportunity Commission. 820 ILCS 96/1-15.

28. The Settlement Agreement failed to provide Ms. Weber with the time-based rights under Section 1-30 of the Act.

29. The Settlement Agreement's extensive waiver provision required Ms. Weber to waive any existing or future claim, right, or benefit related to an unlawful employment practice to which she would otherwise be entitled under any provision of State or federal law, including her claims for unlawful employment practices against JFF.

30. Furthermore, the Act provides that, while a former employee and an employer may enter into a settlement agreement including promises of confidentiality surrounding unlawful employment practices, this is only permissible when certain conditions are met, including, but not limited

15

to, that confidentiality is the documented preference of the employee and is mutually beneficial to both parties, and the settlement agreement does not waive any claims for unlawful employment practices that accrue after the date of execution of the agreement. 820 ILCS 96/1-30(a).

31. Section 1-30(b) of the Act prohibits employers from "unilaterally includ[ing] any clause in a settlement [] agreement that prohibits the. . . former employee from making truthful statements or disclosures regarding unlawful employment practices."

32. JFF unilaterally included the confidentiality and non-disparagement clauses in the Settlement Agreement that would prohibit Ms. Weber from making truthful statements or disclosures regarding JFF's unlawful employment practices.

33. Section 1-30(c) states that "[f]ailure to comply with the provisions of this Section shall render any promise of confidentiality related to alleged unlawful employment practices against public policy void and severable from an otherwise valid and enforceable agreement."

34. As JFF did not comply with the Act, any promises of confidentiality related to JFF's unlawful employment practices are void against public policy and severable from the Settlement Agreement.

35. Additionally, 820 ILCS 96/1-20 provides that "[n]o contract, agreement, clause, covenant, waiver, or other document shall prohibit, prevent, or otherwise restrict an employee, prospective employee, or former employee from reporting any allegations of unlawful conduct to

16

federal, State, or local officials for investigation, including, but not limited to, alleged criminal conduct or unlawful employment practices."

36. Ms. Weber seeks a declaratory judgment stating that the promises of confidentiality and non-disparagement in the Settlement Agreement are void against public policy and severable to the extent they prohibit her reporting rights and rights to make truthful statements and disclosures with regard to JFF's unlawful employment practices.

37. Ms. Weber had significant employment-based claims against Plaintiff, including claims based on Plaintiff's unlawful "barter" and the working conditions of her household.

38. Ms. Weber also seeks a declaratory judgment stating that the waiver is void against public policy and severable to the extent it prohibits Ms. Weber's ability to pursue claims for unlawful employment practices against JFF.

39. Pursuant to 820 ILCS 96/1-35, Ms. Weber is entitled to her attorneys' fees and costs.

WHEREFORE, Counter-Plaintiff Meredith Weber respectfully requests that this Court enter a declaratory judgment finding the waiver, confidentiality and non-disparagement clauses of the Settlement Agreement void against public policy and severable from the Settlement Agreement for the reasons herein, and award her fees.

**COUNT II**
**Reformation- Mutual Mistake**

17

40. Ms. Weber realleges paragraphs 1-20 of her Counterclaim as if fully set forth herein.

41. Ms. Weber required that, as a condition of settlement, she be permitted to advocate for therapy abuse victims such as herself as long as she did not identify Plaintiff.

42. This was attempted to be included in the Settlement Agreement.

43. However, due to the inarticulate language in the Settlement Agreement, the Settlement Agreement fails to clearly articulate the parameters of this ability.

44. As such, Ms. Weber requests that the Court reform the Settlement Agreement to permit advocacy work, including sharing Ms. Weber's story, as long as Ms. Weber does not identify Plaintiff.

WHEREFORE, Counter-Plaintiff Meredith Weber respectfully requests that this Court reform the Contract to conform with the Parties' intent.

**COUNT III**
**Breach of Contract**

45. Ms. Weber realleges paragraphs 1-20 of her Counterclaim as if fully set forth herein.

46. Ms. Weber brings this claim alternatively to the extent the Court finds the Settlement Agreement to be enforceable.

47. Ms. Weber performed her obligations under the Settlement Agreement.

48. Plaintiff breached the settlement agreement by failing to pursue the dispute resolution provisions contained in the agreement.

49. As a result of the breach, Ms. Weber has been subjected to unnecessary legal fees and improper litigation.

50. Ms. Weber is entitled to her fees for bringing these claims.

WHEREFORE, Counter-Plaintiff Meredith Weber respectfully requests that this Court enter judgment in an amount to be determined at trial, for attorneys' fees and costs, and for such other relief as this Court deems fair and just.

### Demand for Jury Trial

Plaintiffs demand a jury trial on all issues so triable.

Dated: July 16, 2025            Respectfully submitted,

/s/Michael D. Haeberle
Michael D. Haeberle (#6309164)
Kaitlyn Harris-Hertel (#6345639)
Patterson Law Firm, LLC
200 W. Monroe, Ste. 2025
Chicago, IL 60606
(312) 223-1699
Fax: (312) 223-8549
mhaeberle@pattersonlawfirm.com
kharris-hertel@pattersonlawfirm.com
smarte@pattersonlawfirm.com

## SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS

FOR AND IN CONSIDERATION of the sum of Eight Hundred Thousand Dollars and No cents ($800,000.00), the receipt and sufficiency of which is hereby acknowledged, the undersigned, MEREDITH WEBER, including all present and former spouses, heirs, devisees, legatees, executors, administrators, representatives, agents, transferees, assigns, subrogees, grantees, indemnitees/indemnitors, predecessors, successors, and attorneys, hereinafter collectively referred to as "RELEASOR" hereby fully and forever releases, remises, acquits, satisfies, and discharges JENNIFER FINLAYSON-FIFE, PH.D. (a/k/a JENNIFER FIFE, JENNIFER FINLAYSON-FIFE, DR. JENNIFER FIFE, DR. JENNIFER FINLAYSON-FIFE), FINLAYSON-FIFE, LLC, THRIVING RELATIONSHIPS, PLLC, COLUMBIA CASUALTY COMPANY and any CNA ENTITY, as well as each of their estates, heirs, executors, administrators, successors-in-interest, assigns, predecessors and/or successors, parent companies, companies, sister companies, suborders, subsidiaries, entities, business units, divisions, affiliates and/or associations, owners, directors, members, managers, officers, employees, partners, representatives, shareholders, attorneys, independent contractors, subcontractors, insurers, underwriters, agents, subrogates, assigns, leasers, lessees, franchisees, and servants hereinafter collectively referred to as "RELEASEES" who are or might be liable directly or vicariously in any way from any and all, and to the broadest extent allowed by law, claims, actions, causes of action, demands, rights, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, liens, med pay, personal injury protection, specialties, covenants, contracts, controversies, agreements, promises, variances, trespasses, damages, judgments, executions, expenses, compensation, rights, attorney fees, costs, loss of services, wrongful death, expenses, compensation and damages whatsoever, whether common law, statutory or extra contractual, which the RELEASOR now has or which may hereafter accrue in law or in equity including all known and/or unknown, foreseen and/or unforeseen, asserted and/or unasserted, contingent, inchoate, suspected and/or unsuspected, developed and/or undeveloped damage and the consequences thereof on account of or in any way growing out of, resulting or to result from MEREDITH WEBER's interactions with RELEASEES, including, but not limited to, the allegations referenced in the complaint filed by RELEASOR in the Circuit Court of the Cook County, Illinois, County Department, Law Division, Case No. 2021 L 003640 (hereinafter collectively referred to as the "INCIDENT").

This SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS and all of the terms herein are collectively referred to hereinafter as the "AGREEMENT." RELEASOR and RELEASEES are collectively referred to hereinafter as the "PARTIES".

In further consideration for the payment set forth above, the RELEASOR represents and covenants that the RELEASOR will dismiss any pending actions with prejudice.

The RELEASOR and RELEASEES have agreed to settle in order to avoid the inconvenience, distractions, and inherent uncertainties associated with any legal proceeding, and the additional legal fees and expenses of continuing this dispute. This AGREEMENT represents a compromise of a disputed claim and any liability, wrongdoing, malfeasance, misfeasance, or negligence on the part of the RELEASEES is expressly denied.

RELEASOR and her attorneys represent and warrant that there is no Centers for Medicare & Medicaid Services ("CMS") lien or claim that is applicable to the matters released in this Settlement Agreement and have determined that CMS has not paid any claims related to this case.

RELEASOR and her attorneys also acknowledge that neither she nor her counsel or any other representative received a notification of a contractual right of reimbursement of medical costs paid by any private insurance company for the medical care associated with the allegations and injuries described in the Complaint. Should any private insurance company seek to exercise its rights, and/or request reimbursement,

FILED DATE: 2/20/2024 3:20 PM 2024L001918

for any medical costs paid on its behalf for the medical care associated with the allegations in the Complaint, RELEASOR agrees to defend, indemnify and hold harmless RELEASEES in connection with any dispute, conflict, claim, demand, or other relief sought by any private insurance company. RELEASOR denies that RELEASOR has been notified about any other medical/insurance liens or that any other medical care provider or insurance carrier has notified RELEASOR of a contractual right to reimbursement of the medical costs paid for RELEASOR's medical care and the proceeds of this settlement received by RELEASOR. To that end, RELEASOR hereby agrees to defend, protect, indemnify and hold harmless the RELEASEES if any person, firm, entity or corporation shall assert, attempt to assert or attempt to collect on any such claim or lien by reason of the foregoing matter and/or relating to this AGREEMENT.

As a further consideration and inducement for this settlement, the RELEASOR agrees to defend, indemnify, protect and hold the RELEASEES harmless from any and all liens, rights of subrogation, indemnification claims, contribution claims, defense claims, losses, liability, actions, damages, causes of action, judgments, costs and expenses, including attorney's fees, whatsoever made by or sustained by or arising from any person, corporation, partnership, state or federal government, governmental agency, hospital, or any other medical provider, health care provider, disability or insurance benefits provider, workers compensation carrier, Medicare, Medicaid or any other entity arising in whole or in part out of the INCIDENT, or in any way connected to the INCIDENT.

The RELEASOR agrees and acknowledges that no promise, inducement, or AGREEMENT, not expressly contained in this AGREEMENT, has been made to her. This AGREEMENT supersedes all previous agreements or understandings, whether written or oral, and contains the entire agreement by and among the RELEASOR and RELEASEES with respect to the INCIDENT. This AGREEMENT may not be altered, modified, or amended except in a writing signed by the RELEASOR and RELEASEES. The RELEASOR represents and warrants that she has the authority to enter into this AGREEMENT, and she intends to be legally bound by it.

The RELEASOR represents and warrants that no other person or entity has any interest in the claims, demands, obligations, or causes of action referred to in this AGREEMENT; that she has the sole right and exclusive authority to execute this AGREEMENT and to receive the sums specified in it; and that there has not been, nor will there be, an assignment or other transfer of any claim, interest right which the RELEASOR may have arising in whole or in part out of the INCIDENT or in any way connected to the INCIDENT.

In entering into this AGREEMENT, it is understood and agreed that the RELEASOR relied wholly upon the RELEASOR's own judgment, belief and knowledge of the nature, extent and duration of said injuries and damages. No representations or statements made by the RELEASEES or by any person or persons representing the RELEASEES or by any physician or therapist employed or engaged by the RELEASEES regarding said injuries and damages or regarding any other matters arising in whole or in part out of the INCIDENT, or in any way connected to the INCIDENT have influenced the RELEASOR to any extent whatsoever in entering into this AGREEMENT.

The parties understand and agree that the origins of the claims at issue in this lawsuit sound in personal physical injury and physical sickness for, among other things, pain, suffering and emotional distress arising out of such physical injury and sickness. All sums set forth herein constitute damages on account of personal injuries or physical sickness, within the meaning of Section 104(a)(2) of the Internal Revenue Code of 1986, as amended. The Settlement Payment is therefore understood and agreed to be allocated solely and exclusively to those alleged damages. While the parties have negotiated this allocation at arm's length and in good faith, neither party has made any warranty or representation with respect to the income tax consequences of the Settlement Payment under this Agreement, and neither party is in any manner relying on the other or their attorneys for an assessment of such tax consequences. The parties are advised to consult

FILED DATE: 2/20/2024 3:20 PM    2024L001918

FILED DATE: 2/20/2024 3:20 PM    2024L001918

with their own tax advisors with respect to any such tax consequences and the issuance, vesting and payment of the Settlement Payment. Consistent with parties' intent that the Settlement Payment shall be made on account of Plaintiff's personal physical injuries and sickness, Defendants – including any insurer or other party that makes the Settlement Payment on behalf of Defendants – shall not issue any Form 1099 other information return to Plaintiff with respect to the Settlement Payment.

The RELEASOR hereby declares that she has had the benefit of advice from her attorneys, or the opportunity to seek advice of counsel, and the terms of this AGREEMENT have been completely read and are fully understood and voluntarily accepted for the purpose of making a full and final compromise of any and all claims arising in whole or in part, or in any way connected to the INCIDENT.

RELEASOR hereby acknowledges and agrees that RELEASOR expressly waives and assumes the risk of any and all claims for damages against the RELEASEES which exist as of this date but of which the RELEASOR does not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect RELEASOR's decision to enter into this AGREEMENT. The RELEASOR understands that this claim is being settled as a business decision only and that payment of the sums specified herein are being made as a complete compromise of matters involving disputed issues of law and fact and the RELEASOR thereby assumes the risk that the facts or law may be otherwise than RELEASOR believes.

### CONFIDENTIALITY AND NON-DISPARAGEMENT

1.  Except as necessary to enforce the terms of this AGREEMENT, RELEASOR and RELEASEES hereto agree that the name of the parties to the settlement, the terms of this AGREEMENT, and any fact concerning its negotiation, execution or implementation ("Confidential Settlement Information') is confidential and not to be disclosed, communicated, posted, or published in any manner or forum directly or indirectly, to anyone, including but not limited to, news media, digital and/or social media, internet source/website/blogs, television, radio, Lexis, Westlaw, the Jury Verdict Reporter, National Jury Verdict Search, National Jury Verdict Settlement search, bar organizations, ITLA, ATLA, or similar publication or database for attorneys, bar associations, legal organizations, or databases, and/or any other persons or entities not expressly excluded herein, except as expressly authorized in this paragraph and paragraph four below. The RELEASORS and RELEASEES may disclose the terms of this AGREEMENT to: (i) a court pursuant to subpoena or order; (ii) taxing authorities as necessary to comply with any statute; (iii) financial advisors; (iv) legal counsel; (v) otherwise as required by law; and (vi) to any other person or entity upon written consent of the party adverse to them in this AGREEMENT. To the extent there is an inquiry as to the status of the claim, RELEASOR AND RELEASEES shall be directed to state: "This matter has resolved" or "This matter has settled."

2.  RELEASOR agrees to keep as confidential the name of RELEASEES, including Dr. Jennifer Finlayson-Fife in her communications with anyone except as expressly authorized in paragraph four below, and RELEASOR agrees to further protect against disclosure of RELEASEES identities by a) not identifying RELEASEES by their names, titles, education, religious affiliation, geographical location, or life coaching activities, b) changing identifiable information about the facts of RELEASOR'S claims, and c) otherwise changing the facts that form the basis of RELEASOR'S Complaint to protect against disclosure of RELEASEES identity, to any person not expressly excluded herein, except as expressly authorized in paragraph four below.

3.  RELEASOR and RELEASEES hereto agree that they will not contribute to, cooperate with, or encourage any publicity regarding this AGREEMENT including, but not limited to, its terms, the parties, or any individual health care providers previously consulted by Dr. Jennifer Fife related to RELEASOR'S claims,

FILED DATE: 2/20/2024 3:20 PM 2024L001918

which might be pursued by any third party or entity, whether legal or non-legal, including but not limited to, news media, digital and/or social media, internet source/website/blogs, television, radio, Lexis, Westlaw, the Jury Verdict Reporter, National Jury Verdict Search, National Jury Verdict Settlement search, bar organizations, ITLA, ATLA, or similar publication or database for attorneys, bar associations, legal organizations, or databases, or any other persons or entities not expressly excluded herein. The undersigned agree that violation of confidential settlement information shall constitute a breach of this agreement which shall release the RELEASEES from its obligations under this provision.

4.      Nothing in this AGREEMENT prevents RELEASOR from discussing her history, her claims or her injuries that form the basis of her Complaint with RELEASOR'S individual medical and individual counseling providers (both physical and mental) and RELEASOR'S local church leaders, which is defined as her local Bishop and Stake President. Nothing in this AGREEMENT prevents RELEASOR from discussing her history, her claims or her injuries that form the basis of her Complaint with her immediate family members (defined as her spouse, parents, siblings, or any children she may have), and Mary Heller. RELEASOR expressly agrees that she has advised and obtained the agreement of her immediate family members (as defined herein) and Mary Heller upon receipt of the confidential information that said persons: (1)  will keep confidential the names of the parties to the settlement, the terms or existence of this AGREEMENT, and any fact concerning its negotiation, execution or implementation, and/or RELEASOR's claims; (2) will not disclose, communicate, post, or publish in any manner or forum directly or indirectly, to anyone, including but not limited to, news media, digital and/or social media, internet source/website/blogs, television, radio, Lexis, Westlaw, the Jury Verdict Reporter, National Jury Verdict Search, National Jury Verdict Settlement search, bar organizations, ITLA, ATLA, or similar publication or database for attorneys, bar associations, legal organizations, or databases, and/or any other persons or entities not expressly excluded herein; and (3) will not contribute to, cooperate with, or encourage any publicity regarding this AGREEMENT, including, but not limited to, its terms, the parties, or any individual health care providers, which might be pursued by any third party or entity, whether legal or non-legal, including but not limited to, news media, digital and/or social media, internet source/website/blogs, television, radio, Lexis, Westlaw, the Jury Verdict Reporter, National Jury Verdict Search, National Jury Verdict Settlement search, bar organizations, ITLA, ATLA, or similar publication or database for attorneys, bar associations, legal organizations, or databases, or any other persons or entities not expressly excluded herein. Upon disclosure of confidential information to RELEASOR'S immediate family members (as defined herein) and Mary Heller, those persons shall be given a copy of this AGREEMENT. RELEASOR agrees that violation of this provision by RELEASOR'S immediate family members (as defined herein) and Mary Heller who receive confidential information will constitute a breach of this agreement which shall release RELEASEES from its obligations under this AGREEMENT and shall entitle RELEASEES to the relief described in paragraph seven below.

5.      RELEASOR agrees that she shall not at any time make any disparaging statements or representations, either directly or indirectly, whether in writing or orally, by word or gesture, to any person whatsoever, or any another entity including but not limited to, any state or federal agency, professional organization, news media, digital and/or social media, internet source/website/blogs, television, radio, Lexis, Westlaw, the Jury Verdict Reporter, National Jury Verdict Search, National Jury Verdict Settlement search, bar organizations, ITLA, or ATLA, about the RELEASEES. RELEASOR expressly agrees that she has advised and obtained the agreement of the persons described in paragraph four who receive confidential information that said persons shall not at any time make any disparaging statements or representations, either directly or indirectly, whether in writing or orally, by word or gesture, to any person whatsoever, or any other entity including but not limited to, any state or federal agency, professional organization, news media, digital and/or social media, internet source/website/blogs, television, radio, Lexis, Westlaw, the Jury Verdict Reporter, National Jury Verdict Search, National Jury Verdict Settlement search, bar organizations, ITLA or ATLA, about the RELEASEES. For purposes of this paragraph, a disparaging statement or

FILED DATE: 2/20/2024 3:20 PM   2024L001918

representation is any communication which, if publicized to another, would cause the recipient of the communication to question the business condition, integrity, competence, good character, professional conduct, or product quality of the person or entity to whom the communication relates. A disparaging statement does not include those statements or representations made by RELEASOR to those persons identified in paragraph four who receive confidential information. The undersigned agree that violation of non-disparagement shall constitute a breach of this agreement which shall release the RELEASED PARTIES from its obligations under paragraphs one and three of this AGREEMENT and shall entitle RELEASEES to the relief described in paragraph seven below.

6.      Nothing in this AGREEMENT shall prevent RELEASOR, RELEASEES, or the persons identified in paragraph Four (4) from responding to any requests for information from any state or federal court, administrative agency or other governmental body.

7.      The undersigned acknowledge, stipulate, and agree to provide fair, adequate, and just compensation for the loss of such consideration, the loss of benefit of the bargain, injury to reputation, increased potential exposure to additional claims, embarrassment, and injury to standing in the community that the RELEASEES would incur should the undersigned, their attorneys, agents, or representatives disclose Confidential Settlement Information or disparage RELEASEES in violation of this agreement. Accordingly, RELEASOR hereby agrees that if a Mediator (RELEASOR will propose four possible mediators, each in the Chicago area, and RELEASEES will choose one of the four mediators)  finds her liable, or her respective attorneys, agents, or representatives liable, for disclosing any Confidential Settlement Information or disparaging RELEASEES in violation of this AGREEMENT, RELEASEES shall be entitled to receive an appropriate monetary amount in liquidated damages from RELEASOR, in the amount of Fifty Thousand Dollars ($50,000.00), plus any attorney's fees and/or costs that are incurred in collecting said liquidated damages. RELEASOR acknowledges, stipulates, and agrees that the amount of said liquidated damages is wholly compensatory, and not punitive. RELEASOR and RELEASEES agree that the mutual promises made under this Section, entitled "Confidentiality and Non-Disparagement," will remain in effect forever.  In the event that a Mediator does not find any alleged violation, the RELEASOR, attorneys and/or representatives shall be entitled to receive reimbursement of any attorneys' fees and costs incurred in defending the charge of an alleged violation from RELEASEES.

To the extent that any term or provision of the AGREEMENT is deemed void or not in compliance with the applicable law, that term or provision alone will be void, while all other terms or provisions will be enforceable. The RELEASEES shall have the opportunity to modify any such provision to conform to such law.

RELEASOR and RELEASEES shall bear their own attorneys' fees and costs incurred in the litigation and through the execution of this AGREEMENT.

The undersigned hereby acknowledges full and final settlement and satisfaction of any and all claims, demands, actions and causes of action of whatever kind or character which RELEASOR has or may have against the RELEASEES by reason of the INCIDENT including but not limited to any claims for bad faith or excess judgment. RELEASEES shall not be estopped or otherwise barred from asserting and expressly reserve the right to assert, any claim or cause of action they may have against the Undersigned or any others.

This AGREEMENT shall be construed and interpreted in accordance with the laws of the State of ILLINOIS. Any suit or proceeding brought hereunder shall have its situs and venue in ILLINOIS.

Facsimile signatures on the AGREEMENT with notarization are deemed acceptable and a photocopy may be used in place of originals for any purpose.

FILED DATE: 2/20/2024 3:20 PM    2024L001918

**I HAVE READ THIS AGREEMENT AND UNDERSTAND AND AGREE TO THE TERMS AND CONDITIONS CONTAINED IN IT.**

BY: _(signature)_
MEREDITH WEBER

STATE OF _Virginia_ )
) ss
COUNTY OF _Henrico_ )

On the _15_ day of _March_ _____, before me personally appeared MEREDITH WEBER, who presented _____ as identification or who is known to me to be the persons described in and who executed the foregoing SETTLEMENT AGREEMENT AND RELEASE OF ALL CLAIMS, and who acknowledged to me that he/she executed it as his/her own free act and deed.

_(signature)_ Shelia Quash
Notary Public

_(Notary seal: SHELIA G. QUASH, NOTARY PUBLIC, REG # 7888849, MY COMMISSION EXPIRES 9/30/2024, COMMONWEALTH OF VIRGINIA)_

Approved as to Form, Content, and Confidentiality & Non-Disparagement:

BY: _Lawrence B. Finn_
The Finn Law Firm

BY: _(signature)_
Jenner Law, P.C.

BY: _(signature)_
Hall Prangle & Schoonveld, LLC