**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| JENNIFER FINLAYSON-FIFE, | ) | |
| | ) | |
| *Plaintiff*, | ) | Case No.: 24-cv-2452 |
| | ) | |
| v. | ) | Hon. April Perry |
| | ) | |
| MEREDITH WEBER, | ) | |
| | ) | |
| *Defendant*. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO DISMISS
COUNTERCLAIMS**

**INTRODUCTION**

The Counterclaim fails to state a claim because (1) the Court already found that the Workplace Transparency Act is inapplicable to the Settlement Agreement because the Settlement Agreement addressed a medical malpractice claim, not an employment dispute; (2) Weber is not entitled to reform the Settlement Agreement because there was no mutual mistake – the confidentiality and non-disparagement provisions were expressly included in the Settlement Agreement to preclude Weber from publicly discussing this dispute; and (3) the dispute resolution provision in the Settlement Agreement was permissive, not mandatory. Accordingly, the Counterclaim should be dismissed with prejudice.

**FACTUAL BACKGROUND**

On February 20, 2024, Plaintiff Jennifer Finlayson-Fife ("JFF") filed a Complaint against Defendant Meredith Weber alleging breach of contract (confidentiality), breach of contract (non-disparagement), and defamation *per se*. Doc. 1.

Weber filed a Motion to Dismiss that was denied by the Court on June 4, 2025. Doc. 17.

On July 16, 2025, Weber filed a Three-Count Counterclaim against JFF (the "Counterclaim"). Doc. 25. As alleged in the Counterclaim, on March 15, 2022, Weber and JFF executed a Settlement Agreement regarding Cook County Case Number 2021-L-3640. Doc. 25 ¶ 19, Exhibit A. The Counterclaim seeks a declaratory judgment that the confidentiality portions of the Settlement Agreement are void pursuant to the Illinois Workplace Transparency Act, 820 ILCS 96/1-1, *et seq*. (the "IWTA"). The Counterclaim also alleges that Weber is entitled to reformation of the Settlement Agreement based on a mutual mistake, and that JFF breached the Settlement Agreement's dispute resolution clause.

1

**STANDARD OF REVIEW**

The Court applies the same standard on a Rule 12(b)(6) motion to dismiss a counterclaim as it does on a motion to dismiss a complaint for failure to state a claim. See *Cozzi Iron & Metal, Inc. v. U.S. Off. Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). To survive under Rule 12(b)(6), a pleading must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A counterclaim satisfies this standard when its factual allegations "raise a right to relief above the speculative level." See *Twombly*, 550 U.S. at 555-56 (citations omitted). The Court "accept[s] the allegations in the complaint as true unless they are 'threadbare recitals of a cause of action's elements, supported by mere conclusory statements.'" *Katz-Crank v. Haskett*, 843 F.3d 641, 646 (7th Cir. 2016) (quoting *Iqbal*, 556 U.S. at 663).

**ARGUMENT**

**I.  THE IWTA IS INAPPLICABLE BECAUSE THE SETTLEMENT WAS A MEDICAL MALPRACTICE SUIT, NOT AN EMPLOYMENT LAWSUIT**

Weber's request for a declaratory judgment pursuant to the IWTA was already considered and rejected by the Court. As the Court found in denying Weber's Motion to Dismiss:

> While the Cook County case did involve allegations that there had been an employment relationship between the parties, the claims (for medical negligence, lack of informed consent, and negligent infliction of emotional distress) were premised on the therapist-patient relationship between Plaintiff and Defendant rather than any employment relationship that may have existed.
> …
> There were no claims of unlawful employment practices within the Cook County complaint or the Settlement Agreement. Rather, the Cook County complaint alleged that Plaintiff having employed Defendant was a violation of Plaintiff's professional ethical obligations.

2

Doc 17 p. 9. The Court concluded, "Defendant has not demonstrated that the IWTA is applicable to the current case." Doc 17 p. 10. Weber's Counterclaim makes the exact same argument as her Motion to Dismiss, and should be denied for all the same reasons.

The Court's previous rejection of Weber's strained interpretation of the IWTA was correct. The IWTA only applies to employer-employee disputes. 820 ILCS 96/1-30. Weber asserts that she was an employee of JFF. CC ¶ 5, 23. However, Weber's Cook County complaint against JFF was for medical malpractice, negligence, and negligent infliction of emotional distress.[1] The settlement claims were based on a therapist-patient relationship, not an employer-employee relationship. Accordingly, the IWTA does not apply.

Weber pleads a series of allegations asserting an employment relationship (Doc. 25 ¶ 6-16). However, Weber's Cook County complaint, and the Settlement Agreement had nothing to do with the performance of services and did not contemplate an employer-employee relationship. When a complaint's allegations are contradicted by exhibits, the "facts communicated by that document control over allegations to the contrary." *Zablocki v. Merchants Credit Guide Co.*, 968 F.3d 620, 623 (7th Cir. 2020).

Weber also argues that the release clause in the Settlement Agreement "would prevent Ms. Weber from pursuing claims for unlawful employment" therefore, the Settlement Agreement applies to an employee-employer relationship and the IWTA is triggered. Doc. 25 ¶ 20. However, this is an absurd argument because, if true, any and all settlement agreements with broad release language would trigger the IWTA – a preposterous result. *Full Circle Villagebrook*

---

[1] The Court can take judicial notice of the allegations made in the Cook County complaint because it is a public record and its authenticity is not disputed. See *Fosnight v. Jones*, 41 F.4th 916, 922 (7th Cir. 2022) ("It's well established that judges may take judicial notice of matters of public record when ruling on a motion to dismiss."). In so doing, the Court does not assume that the facts alleged in the Cook County complaint have any factual basis. The Cook County complaint is attached as Exhibit A for the Court's convenience.

*GP, LLC v. Protech 2004-D, LLC*, 119 F.4th 522, 526 (7th Cir. 2024) ("a contract will not be interpreted literally if doing so would produce absurd results"). Also the plain language of the release, while intended to be broad, contemplates the type of lawsuit being settled – a medical malpractice suit – which is why it includes terms such as "personal injury protection," "med pay," and "wrongful death." Doc. 25, p. 20. The provision does not even mention employer-employee issues or any statutes that regulate employer-employee disputes. A plain language reading of the Settlement Agreement would find that it was not applicable to an employer-employee dispute, and therefore, does not trigger the IWTA.

Further, even if the IWTA applied, Weber would not be entitled to void the confidentiality provision. The IWTA grants an employee the right to revoke a settlement agreement within 7 calendar days of execution. 820 ILCS 96/1-30(a)(6); *Howard v. Proviso Township High School Board of Education*, No. 21-cv-3573, 2023 U.S. Dist. LEXIS 11024, at *15 (N.D. Ill. Jan. 23, 2023) (finding confidentiality provision was unenforceable because the employer publicly filed the agreement, but noting in dicta that the employee "did not convey an intention to revoke the agreement until after the seven-day period expired"). However, that does not mean that every agreement is void absent a clause expressly reflecting that statutory right to revoke. In fact, Weber's interpretation is contrary to the express language of the IWTA because it would give her the right to revoke at will years after execution (which she is attempting here). As this Court already found, "The IWTA does require that certain terms of settlement agreements be explicit, but the time periods for review and revocation are not among them." Doc 17 p. 9-10. Accordingly, Weber has not stated a claim upon which relief can be granted in Count I.

II. **THERE WAS NO MUTUAL MISTAKE – THE PARTIES AGREED TO CONFIDENTIALITY AND NON-DISPAGEMENT, NOT THAT WEBER COULD PUBLICLY TELL HER STORY**

Weber claims that she "required that, as a condition of settlement, she be permitted to advocate for therapy abuse victims…" Doc. 25 ¶ 41. Accordingly, she requests to reform the Settlement Agreement "to permit advocacy work, including sharing Ms. Weber's story." Doc. 25 ¶ 44. However, these terms are not a mutual mistake – they are expressly contrary to the Settlement Agreement.

"Reformation is available when the parties, having reached an agreement and having then attempted to reduce it to writing, fail to express it correctly in the writing." *Indiana Ins. Co. v. Pana Community Unit School Dist. No. 8*, 314 F.3d 895, 903-04 (7th Cir. 2002) (quoting Restatement (Second) of Contracts, § 155 cmt. a). "A mutual mistake is one where both parties understand that the real agreement is what one party alleges it to be, then, *unintentionally*, a drafted and signed contract does not express the true agreement." *Cameron v. Bogusz*, 305 Ill. App. 3d 267, 272 (1st Dist. 1999) (emphasis added); see also *Spies v. De Mayo*, 396 Ill. 255, 272 (Ill. 1947) (a mutual mistake that supports reformation occurs when "the parties intended to say a certain thing but mistakenly expressed another."). Reformation is appropriate in such circumstances because "an actual understanding has been reached by the parties, but *through some error*, their written contract does not express their actual understanding." *Wheeler-Dealer, Ltd.*, 379 Ill. App. 3d at 871 (emphasis added); see also *Young v. Verizon's Bell Atlantic Cash Balance Plan*, 667 F. Supp. 2d 850, 894 (N.D. Ill. 2009) (reformation is appropriate where "a written agreement does not reflect the clear intent of the parties *due to a drafting error.*") (emphasis added).

There was no drafting error or mistake. The Settlement Agreement expressly states, "The RELEASOR agrees and acknowledges that no promise, inducement, or AGREEMENT, not expressly contained in this AGREEMENT, has been made to her. This AGREEMENT supersedes all previous agreements or understandings, whether written or oral, and contains the entire agreement by and among the RELEASOR and RELEASEES with respect to the INCIDENT…." Doc. 25, p. 21. Despite this expressly stated and agreed to language, there is no mention of Weber being entitled to "advocacy work" in the Settlement Agreement.

Further, Weber's request to "tell her story" is contrary to the entire purpose of the Settlement Agreement. The Settlement Agreement has detailed confidentiality and non-disparagement provisions. These provisions were included with the clear intention that Weber not publicly discuss this matter.[2]

Weber's request for reformation by mutual mistake fails because she fails to plead any facts that the mistake was mutual. In fact, the mistake she alleges is contrary to the plain language of the Settlement Agreement. Therefore, she has failed to state a claim for reformation based on mutual mistake and Count II should be dismissed with prejudice.

### III.    THE DISPUTE RESOLUTION PROVISION WAS NOT MANDATORY AND THEREFORE, WAS NOT A BREACH OF CONTRACT

Weber alleges that JFF "breached the settlement agreement by failing to pursue the dispute resolution provisions contained in the agreement," (Doc. 25 ¶ 48), however, those provisions were not mandatory.

There is a difference between mandatory and permissive arbitration agreements. The Court should not compel arbitration where "[t]he language of the arbitration clause is permissive

---

[2] Weber's Counterclaim is yet another example of her violating the Settlement Agreement and defaming JFF by calling her "unethical," "exploitive," and that JFF "violated Illinois state and federal wage and hour laws."

rather than mandatory and it does not state that it is the exclusive remedy." *Graham v. Chubb Insurance Co.*, No. 17 cv 1793, 2017 U.S. Dist. LEXIS 66874, at *2 (N.D. Ill. May 2, 2017) (Court declined to compel arbitration where the provision used the word "may").

Here the language is not mandatory. The Settlement Agreement states, "*if* a Mediator (RELEASOR will propose four possible mediators, each in the Chicago area, and RELEASEES will choose one of the four mediators) finds her liable…" Doc. 25, p. 24 ¶ 7 (emphasis added). There is no mandatory language compelling JFF to institute a mediation, the language triggers a liquidated damages provision "if" a mediation occurs. However, there was no language requiring mediation or providing that it was an exclusive remedy. Because the language was permissive, JFF was entitled to file suit in court, and doing so was not a breach of any contract. Therefore, Weber has failed to state a claim for breach of contract and Count III should be dismissed with prejudice.

## **CONCLUSION**

For the foregoing reasons, Plaintiff Jennifer Finlayson-Fife respectfully requests that the Court dismiss Meredith Weber's counterclaims with prejudice, and for any other relief this Court deems just.

Dated: August 27, 2025                                     Respectfully Submitted,

Jennifer Finlayson-Fife

 /s/ Steven P. Mandell
One of Plaintiff's Attorneys

Steven P. Mandell
Bryan G. Lesser
Mandell Menkes LLC
1 N. Franklin Street, Suite 900
Chicago, IL 60606
Telephone: 312-251-1000
Email: smandell@mandellmenkes.com
          blesser@mandellmenkes.com

## <u>CERTIFICATE OF SERVICE</u>

The undersigned, an attorney, certifies that a copy of the foregoing document has been served on August 27, 2025 via the Court's CM/ECF system on all counsel of record who have consented to electronic service.

<u>/s/ Steven P. Mandell</u>