UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JENNIFER FINLAYSON-FIFE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 24-cv-2452 |
| v. | ) |
| | ) Judge April M. Perry |
| MEREDITH WEBER, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

After she was sued by Jennifer Finlayson-Fife ("Finlayson-Fife"), Meredith Weber ("Weber") filed counterclaims against Finlayson-Fife seeking a declaratory judgment, reformation of contract, and alleging a breach of contract. Doc. 25. Finlayson-Fife now moves to dismiss the counterclaims pursuant to Federal Rule of Civil Procedure 12(b)(6). Doc. 30. For the reasons that follow, Finlayson-Fife's motion to dismiss is granted.

**BACKGROUND**

The facts of this case are more thoroughly detailed in the Court's June 4, 2025 Opinion and Order, which is incorporated by reference into this Opinion. Doc. 17. In summary, the relevant facts are as follows:

Around August 2017, Weber contacted Finlayson-Fife seeking therapy and counseling services and became a client of Finlayson-Fife. Doc. 25 at 12. In October 2017, Finlayson-Fife suggested to Weber that Weber leave her home on the East Coast and stay with Finlayson-Fife in exchange for helping around the house. *Id*. Weber accepted Finlayson-Fife's offer in June 2018. *Id.* Finlayson-Fife continued to give therapy sessions to Weber in exchange for Weber's work as a nanny and help with other household tasks such as grocery shopping and meal preparation. *Id.*

at 13. Finlayson-Fife created a spreadsheet in order to track Weber's work hours and apply them as payment to any outstanding therapy bills. *Id.* Weber subsequently sued Finlayson-Fife in Cook County Circuit Court (the "Cook County case") for claims of medical malpractice, lack of informed consent for treatment, and negligent infliction of emotional distress. Doc. 31-1 at 22-27. The parties entered into a Settlement Agreement that included confidentiality and non-disparagement terms as well as reference to a dispute resolution process for breaches of the Settlement Agreement. Doc. 25 at 20-25.[1] The Cook County case was subsequently dismissed by agreement of the parties.[2]

## LEGAL STANDARD

The legal standard for a motion to dismiss a counterclaim is the same as for a Rule 12(b)(6) motion to dismiss a complaint. *See Cozzi Iron & Metal Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). A Rule 12(b)(6) motion is a challenge to the sufficiency of a pleading, not its merits. *See Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). When considering such a motion, the Court accepts as true all well-pleaded facts and draws all reasonable inferences from those facts in the pleader's favor. *See Kubiak v. City of Chicago*, 810 F.3d 476, 480-81 (7th Cir. 2016). To survive a motion to dismiss, a pleader need only include "a short and plain statement of a claim that is plausible on its face and entitles them to relief." *Roldan v. Stroud*, 52 F.4th 335, 339 (7th Cir. 2022). The short and plain statement must "give the [opposing party] fair notice of what the claim is and the grounds upon which it rests." *Bell Atl.*

---

[1] A contract attached to a complaint is considered part of the pleadings. *See Chicago Dist. Council of Carpenters Welfare Fund v. Caremark, Inc.*, 474 F.3d 463, 466 (7th Cir. 2007).

[2] The Court may take judicial notice of public records, including court records. *See Fox v. American Alternative Ins. Corp.*, 757 F.3d 680, 684 (7th Cir. 2014). Here, the Court takes judicial notice of the Cook County Circuit Court's online docket, which shows the Cook County case was dismissed by agreement on March 16, 2022.

*Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A claim is facially plausible if it contains "factual content that allows the court to draw the reasonable inference that the [opposing party] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The factual allegations must be sufficient to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555. Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient to survive a motion to dismiss. *See Iqbal*, 556 U.S. at 678. The law is clear that a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

## ANALYSIS

### I. Declaratory Judgment (Count I)

In Count I, Weber seeks a declaratory judgment that her Settlement Agreement with Finlayson-Fife is void pursuant to the Illinois Workplace Transparency Act ("IWTA").[3] Given that the Court ruled in its June 4, 2025 Opinion that the IWTA does not apply to the Settlement Agreement, *see* Doc. 17, the Court does not find this counterclaim to be plausibly alleged.

In an attempt to bring the Settlement Agreement within the ambit of the IWTA, Weber includes additional allegations in her counterclaims about her employment relationship with Finlayson-Fife. But ultimately, these additional allegations do not disturb the Court's previous finding that neither the Cook County case nor the Settlement Agreement included claims for unlawful employment practices as required to bring the Settlement Agreement within the ambit of the IWTA. *See* Doc. 17 at 9. It may be that Weber could have brought employment practices

---

[3] The parties have not disputed that Illinois law should apply to the counterclaims. Therefore, the Court applies Illinois law. *See McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014) ("When no party raises the choice of law issue, the federal court may simply apply the forum state's substantive law.").

3

claims against Finlayson-Fife at the time of the Cook County case, as she alleges. *See* Doc. 25 at 17. But Weber cannot argue now that the IWTA applies based upon claims she never brought.

Even if the IWTA did apply, Weber has not plausibly alleged that it was violated. The Court has already determined that the IWTA's time periods for review and revocation are not terms that the IWTA requires to be expressly included in a Settlement Agreement. Doc. 17 at 9-10. Weber still has not alleged that she did not have the requisite twenty-one days to review the Settlement Agreement or that she attempted to revoke it within seven days and was unable to do so, and therefore she has not plausibly alleged a violation of the IWTA. The only other two provisions of the IWTA cited by Weber are also clearly inapplicable to this case. It is true that 820 ILCS 9/6/1-20 bars employers from prohibiting reports of legal violations to government officials. But the Settlement Agreement does not prevent Weber from making such reports, and Finlayson-Fife has not taken the position that Weber cannot report unlawful conduct to the government. *See* Doc. 35 at 2-3 ("The Settlement Agreement does not forbid Weber from reporting to government officials."). Weber's reliance on 820 ILCS 96/1-25 is also unavailing, given that the statute explicitly applies only to contracts that involve "conditions of employment or continued employment," which is not even remotely what the Settlement Agreement entailed.

Finally, Weber argues that public policy prevents the waiver provision of the Settlement Agreement from being enforced and asks permission to bring an unlawful employment practice claim against Finlayson-Fife. Even absent the waiver provision of the Settlement Agreement, Weber would be prevented from now raising claims of unlawful employment practices against Finlayson-Fife by the doctrine of *res judicata*, which bars a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action.[4] *See Rein v. David A.*

---

[4] The statute of limitations also poses a significant problem for Weber, who indicates that she wants to bring an "unlawful employment practice" case against Finlayson-Fife under the Illinois Human Rights

4

*Noyes & Co.*, 665 N.E.2d 1199, 1206 (Ill. 1996) ("The rule against claim-splitting, which is an aspect of the law of preclusion, prohibits a plaintiff from suing for part of a claim in one action and then suing for the remainder in another action."); *see also Carr v. Tillery*, 591 F.3d 909, 913 (7th Cir. 2010) ("You cannot maintain a suit, arising from the same transaction or events underlying a previous suit, simply by a change of legal theory."). Weber's employment claims, which arise from the barter of therapy services for household work, involve the same set of core facts as her malpractice claims. Weber had not only the right, but also the obligation to raise them in Cook County case. *See Cooney v. Rossiter*, 986 N.E.2d 618, 625 (Ill. 2012) ("[R]es judicata promotes judicial economy by requiring parties to litigate all rights arising out of the same set of operative facts in one case."). Given that the waiver provision of the Settlement Agreement provides for the same outcome as Illinois' *res judicata* doctrine, it is hardly plausible that public policy would require the waiver to be voided, and Weber cites no authority that convinces the Court that any claim could be stated on this basis.

Because Weber has not plausibly alleged that the IWTA applies to the Settlement Agreement, and even if it did there is no provision of the IWTA that would void the waiver provision of the Settlement Agreement, Count I is dismissed.

## II. Reformation (Count II)

In Count II of her counterclaims, Weber asks the Court to reform the Settlement Agreement to permit Weber to do advocacy work, including by sharing her story, so long as she does not identify Finlayson-Fife. To state a cause of action for reformation, the complaining party must allege "(1) the existence and substance of an agreement between the parties and the

---

Act ("IHRA") or Title VII. Doc. 25 at 15. The IHRA has a two-year statute of limitations for charges to be filed with the Department of Human Rights, 775 ILCS 5/7A-102, and Title VII claims must be brought within no more than 300 days of the discriminatory practice, 42 U.S.C. § 2000e-5. Weber appears to have not worked for Finlayson-Fife since 2018. *See* Doc. 31-1 at 14.

identity of the parties to that agreement; (2) that the parties agreed to reduce their agreement to writing; (3) the substance of the written agreement; (4) that a variance exists between the parties' original agreement and the writing; and (5) the basis for reformation (*e.g.*, mutual mistake)." *Briarcliffe Lakeside Townhouse Owners Ass'n v. City of Wheaton*, 524 N.E.2d 230, 235 (Ill. App. Ct. 1988). "The underlying basis for a reformation action is the existence of a mutual understanding between the parties which the parties agreed to reduce to writing, but in doing so, either through mutual mistake or mistake on one side coupled with fraud on the other, omitted some material provision." *Id.* "To warrant reformation of a contract in the absence of fraud, any mistake in drafting it must have been mutual." *In re Marriage of Perdue*, 514 N.E.2d 1011, 1014 (Ill. App. Ct. 1987).

Assuming that Weber's desired reformation of the contract is different from the Settlement Agreement as currently written,[5] Weber fails to plead the necessary elements to state a claim for reformation. Specifically, Count II does not plead the existence of a mutual agreement between Weber and Finlayson-Fife related to Weber's ability to tell her story. Although Weber alleges that Weber "required" this condition, Doc. 25 at 18, the counterclaims contain no allegation that Finlayson-Fife ever agreed to such a term. Weber simply alleges that this ability was "attempted to be included" in the final settlement agreement. *Id*. But there are all sorts of things one party attempts to include in a settlement agreement that the other party does

---

[5] Both parties seem to agree that the Settlement Agreement prohibits Weber from doing advocacy work or otherwise telling her story. *See* Doc. 31 at 7. ("In fact, the mistake she alleges is contrary to the plain language of the Settlement Agreement."). However, paragraph two of the Settlement Agreement states that Weber agrees to protect against disclosure of Finlayson-Fife's identity by "changing identifiable information about the facts of [Weber]'s claims" or "otherwise changing the facts that form the basis of [Weber]'s Complaint to protect against disclosure" of Finlayson-Fife's identity. This provides an explicit basis for Weber to "tell her story," so long as she does so in a manner that protects the identify of Finlayson-Fife. *See Wood v. Evergreen Condo. Ass'n*, 189 N.E.3d 1045, 1057 (Ill. App. Ct. 2021) ("Generally, when interpreting a contract, we must give effect to all of the contract's provisions if it is possible to do so.").

6

not agree to include. For reformation to be appropriate, there must have been a mutual agreement by the parties. Although the Court agrees with Weber that the Settlement Agreement contains "inarticulate language," Doc. 33 at 7, that alone is insufficient to demonstrate a mutual mistake, particularly when both parties were represented by counsel. Since Weber has failed to adequately plead the necessary elements for reformation, the Court dismisses Count II.

### III. Breach of Contract (Count III)

In her final counterclaim, Weber alleges in Count III that Finlayson-Fife breached the Settlement Agreement by failing to pursue the dispute resolution process specified in the Settlement Agreement. This counterclaim is not plausibly alleged because the dispute resolution process outlined in the Settlement Agreement is not clearly mandatory.

The elements of a breach of contract claim are "(1) the existence of a valid and enforceable contract, (2) performance by the plaintiff, (3) breach of contract by defendant, and (4) resultant injury to the plaintiff." *Zahdan v. Frontline Bus. Enter. Inc.*, 241 N.E.3d 1040, 1049-50 (Ill. App. Ct. 2024). Only a duty imposed by the terms of the contract can give rise to a breach and any duties are limited by the scope of the contract. *Martin v. State Farm Mut. Auto. Ins. Co.*, 808 N.E.2d 47, 54 (Ill. App. Ct. 2004). Parties may contract for an exclusive remedy under a contract, and "[o]nce made and agreed upon, this remedy provision is binding on the parties and will be recognized and enforced by our courts." *O'Shield v. Lakeside Bank*, 781 N.E.2d 1114, 1119 (Ill. App. Ct. 2002). Such a remedy provision will be deemed exclusive "if the contract warrants this interpretation," even if the word "exclusive" does not expressly appear within the contract. *Id.* "However, the contract must clearly indicate that the parties intend that the stipulated remedy be the sole or exclusive remedy." *Lake County Trust Co. v. Two Bar B, Inc.*, 537 N.E.2d 1015, 1019 (Ill. App. Ct. 1989).

The Court finds that the Settlement Agreement does not clearly indicate that mediation was intended to be the sole remedy available for breach. Paragraph seven provides in relevant part that Weber "agrees that if a Mediator … finds her liable… for disclosing any Confidential Settlement Information or disparaging [Finlayson-Fife] in violation of" the Settlement Agreement, Finlayson-Fife will be entitled to $50,000 in liquidated damages. Doc. 25 at 24. In the middle of this sentence, it provides that Weber "will propose four possible mediators," and that Finlayson-Fife "will choose one of the four mediators." *Id*. However, although the Settlement Agreement mentions mediation, how a mediator would be chosen, and the amount of damages that could be applied by a mediator, nowhere does it state that mediation is the exclusive remedy for bringing claims for a breach of the Settlement Agreement nor does it prohibit Finlayson-Fife from pursuing a cause of action in a court of law.[6] There is simply no indication that the parties intended mediation to be the sole remedy for claims under the Settlement Agreement.

Weber's only argument in support of the proposition that mediation is mandatory is the use of the word "will" in the provision that states that Finlayson-Fife "*will* propose four possible mediators." This, however, makes mandatory the process by which a mediator would be selected, not the fact that a mediator must be selected. Weber suggests that it "would be nonsensical to devote an entire paragraph to setting mediation as the dispute resolution method … if mediation was not mandatory." Doc. 33 at 8-9. But the parties did not devote an entire paragraph to mediation. They devoted two sentences to mediation. And neither one of those

---

[6] Even if mediation were to occur, the Settlement Agreement does not indicate that it would be binding. Generally, mediation is not binding. *See Trimble v. Graves*, 947 N.E.2d 885, 889 (Ill. App. Ct. 2011) ("Mediation is a form of alternative dispute resolution in which a mediator facilitates communication and negotiation between parties to assist them in reaching a voluntary agreement about a dispute.")

sentences indicates that mediation is the only dispute resolution method, as opposed to one possible dispute resolution method. Many contracts provide for mediation or arbitration as a possibility without making them mandatory.

Other terms in the Settlement Agreement reinforce the idea that Finlayson-Fife cannot be held liable for breach of contract based upon a failure to mediate. Namely, paragraphs four and five state that it is Finlayson-Fife (not Weber) who is "entitled" to seek the relief set forth in paragraph seven. Doc. 25 at 23. An entitlement is not a duty, and a party cannot be in breach of contract for failure to avail itself of an entitlement. *See Martin*, 808 N.E.2d at 54 ("only a duty imposed by the terms of the contract can give rise to the breach"). Since the dispute resolution provision is not clearly mandatory, Finlayson-Fife cannot have breached the agreement by choosing to pursue her claims in a court of law instead. Therefore, Count III is dismissed.

## CONCLUSION

For the foregoing reasons, Finlayson-Fife's motion to dismiss is granted. Because parties are generally entitled to re-plead once before a dismissal is with prejudice, Weber may file amended counterclaims to the extent she can do so consistent with the guidance laid out in this opinion.

Dated: February 25, 2026

                                                          APRIL M. PERRY
                                                          United States District Judge